Rebecca Estelle Pugh WITT, Plaintiff,

v.

**SOUTH CAROLINA NATIONAL BANK, Defendant.**

**Civ. A. No. 3:84–2100–14.**

United States District Court, D. South Carolina, Columbia Division.

June 26, 1985.

---

John P. Freeman, Columbia, S.C., for plaintiff.

Manton M. Grier, Boyd, Knowlton, Tate & Finlay, L. Henry McKellar, Associate Gen. Counsel, Columbia, S.C., for defendant.

## ORDER

WILKINS, District Judge.

Plaintiff's federal cause of action was brought under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C.A. §§ 1961–68 (West Supp.1970–1983). Finding that there is an impermissible identity between the RICO defendant and the "enterprises" asserted by Plaintiff, Defendant's motion for summary judgment is granted.

Plaintiff alleged in her original complaint that from 1973 through 1980 Defendant "operated a scheme and engaged in an illegal and fraudulent course of business which involved the operation of defendant's trust department through false and deceptive reporting to trust investors of whom plaintiff was one." Complaint, ¶ 36. The RICO enterprises alleged in the initial complaint were "[p]laintiff's revocable trust with defendant and *defendant's trust department*" (emphasis added). *Id.* The complaint alleged that Defendant "conducted the affairs of its trust department and Mrs. Witt's trust, as enterprises through a pattern of racketeering activity consisting of numerous acts of mail fraud...." *Id.*, ¶ 38.

Plaintiff later filed an amended complaint wherein she alleged that Defendant's scheme and fraudulent course of business "involved the operation of individual trust accounts, including plaintiff's and an income common trust fund...." Amended Complaint, ¶ 36. The RICO enterprises alleged in the amended complaint were "[p]laintiff's revocable trust with defendant and the so-called income common trust fund in which much of the assets of plaintiff's trust was invested." *Id.* Plaintiff's attorney admitted during oral arguments that the amended complaint was filed because of the decision of the Fourth Circuit Court of Appeals in *U.S. v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). *Computer Sciences* held that there may not be an identity of the RICO defendant and enterprise. Plaintiff has artfully attempted to plead around this controlling precedent.

## FACTS

Plaintiff (Mrs. Witt), an elderly, retired schoolteacher, received a sizable estate through inheritance. Defendant, South Carolina National Bank (SCN), is one of the largest banks in South Carolina. SCN's services include the operation of a trust department, which is an unincorporated division of Defendant housed within the offices of SCN. The trust department conducts the affairs of the trusts it administers as a part of Defendant's corporate activity. Fees and other income are paid to SCN in return for the services rendered by the trust department. SCN, acting through the employees of the trust department, is the fiduciary of all trusts administered by that department. This suit arises out of the alleged corporate acts or omissions of Mrs. Witt's trust officers and their failure to adequately apprise her of the true value of her trust assets over a period of years.

In the fall of 1973, Mrs. Witt met with SCN representatives and discussed establishing a trust account. As a result of this initial meeting, Mrs. Witt established a revocable "Generation Skipping" trust, an estate planning device which was to provide a steady flow of income to Mrs. Witt during her lifetime and then to her daughter during her daughter's lifetime, and the transfer of trust assets to Mrs. Witt's grandchildren upon her daughter's death. The parties disagree as to whether the trust was established in October or December of 1973, and the manner of disclosing the value of trust assets. There was clearly, however, some discussion between Mrs. Witt and SCN's officers concerning the placement of Mrs. Witt's assets in the Income Common Trust Fund, a bond fund administered by the bank. It appears that there was little discussion which might have advised Mrs. Witt of the potential risks to her capital or of the means by which she could have personally determined the overall performance of the bond market, the Income Common Trust Fund, or her individual trust.

In the years following the establishment of her trust, Mrs. Witt made contributions totalling $96,120.33. SCN and its employees administered the trust until August 1984, when Mrs. Witt terminated her trust after she learned of the true market value of the trust assets and after the assets failed to recover their value after several months. The market value of the assets in August 1984 was $86,678.59 and the carrying or book value was $94,528.00.

During the pendency of the trust, SCN provided Mrs. Witt with semiannual accountings which were generated by a computer software program. The accountings contained a list of trust assets shown at "asset carrying values." Generally speaking, asset carrying values are merely "book values" or a figure representing dollar amounts deposited into the account. For all practical purposes, the accountings were little more than "receipts" for monies deposited, as the semiannual accountings did not inform Mrs. Witt of the true or current market value of her assets. Moreover,

Mrs. Witt was provided with an annual notice informing her of the availability of the annual report of the Income Common Trust Fund. The annual report was available upon request and without charge, and would have informed Mrs. Witt of the current market value of the assets in her trust. However, the notice did not inform Mrs. Witt that the information provided in the annual report would disclose to her the current market value of her trust assets. Further, investment reviews, which also provide the current market value of trust assets, were in fact regularly provided to some trust customers by their administering officers. Mrs. Witt did not receive these investment reviews. However, SCN apparently did provide Mrs. Witt's accountants with information on a regular basis regarding distributions, long term gains and long term losses incurred in administering the trust.

Defendant contends in its motion for summary judgment that there are no questions of material fact that (1) it fully complied with the terms of the trust agreement entered into with Mrs. Witt in 1973 and with its statutory and regulatory duties concerning disclosure; and (2) the enterprises alleged (the Income Common Trust Fund and Mrs. Witt's trust) share an identity with the named defendant; that is, the "enterprises" alleged are merely a part of SCN's corporate activity. The Court finds it necessary to address only the last contention of Defendant.

## DISCUSSION

The limited question before the Court is whether there exists an issue of material fact that the common trust fund and Plaintiff's individual trust share a mutual identity with Defendant such that Defendant is entitled to judgment as a matter of law. In other words, does either the common trust fund or Plaintiff's individual trust constitute an enterprise separate and apart from the RICO defendant, or are they in substance merely a part of SCN's corporate activity?

■ The issue of whether a defendant may also be the RICO "enterprise" is controlled in this circuit by *U.S. v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In that case, Computer Sciences Corporation (CSC) was named as a defendant, along with several of its officers, in an indictment alleging RICO violations, mail fraud, wire fraud, and presenting false claims to the United States Government. The "enterprise" alleged in the indictment was the Infonet Division of CSC, an organization which had no corporate existence separate and apart from that of CSC. The district court dismissed portions of the indictment against CSC on grounds, *inter alia*, of identity of defendant and enterprise. The Fourth Circuit Court of Appeals agreed with the lower court on the "identity" issue:

> We conclude that "enterprise" was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and, failing that, to punish. To be sure, the analogy between individuals and fictive persons such as corporations is not exact. Still, we would not take seriously, in the absence, at least, of very explicit statutory language, an assertion that a defendant could conspire with his right arm, which held, aimed and fired the fatal weapon. A corporation, in common parlance, is not regarded as distinct from its unincorporated divisions either.

689 F.2d at 1190.

The decision in *Computer Sciences* has been relied upon in at least one case in this circuit, *Umstead v. Durham Hosiery Mills, Inc.*, 592 F.Supp. 1269, 1270–71 (M.D.N.C.1984); *see also, In re Action Industries Tender Offer*, 572 F.Supp. 846, 849 (E.D.Va.1983). The same result has been reached in decisions of other courts. *E.g., Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *Bennett v. Berg*, 685 F.2d 1053, 1061–62 (8th Cir.1982), *aff'd en banc*, 710

F.2d 1361 (8th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581, 585 (N.D.Cal.1984); *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1306 (D.Colo.1984); *Willamette Sav. & Loan v. Blake & Neal Finance Co.*, 577 F.Supp. 1415, 1427 (D.Ore.1984); *Yancoski v. E.F. Hutton & Co., Inc.*, 581 F.Supp. 88, 97 (E.D.Pa.1983); *Bulk Oil (Zug) AG v. Sun Co., Inc.*, 583 F.Supp. 1134, 1144–45 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1431 (2d Cir. 1984); *Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352, 357 (E.D.Mich. 1983); *Bays v. Hunter Savings Assoc.*, 539 F.Supp. 1020, 1023–24 (S.D.Ohio 1982); *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F.Supp. 1125, 1135–36 (D.Mass. 1982).

The decision in *Haroco* points out that there is now a split in the circuits on the issue of identity of the RICO defendant and enterprise, the majority of circuits following *Computer Sciences* with the Eleventh Circuit's opposite holding set forth in *U.S. v. Hartley*, 678 F.2d 961, 987–90 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). 747 F.2d at 399. In *Haroco*, the Seventh Circuit Court of Appeals, in following *Computer Sciences* and rejecting *Hartley*, reasoned as follows:

> We do not doubt that a corporation may satisfy the section 1961 definitions of both "person" and "enterprise," as the court observed in *Hartley* .... But we focus our attention on the language in section 1962(c) requiring that the liable person be "employed by or associated with any enterprise" which affects interstate or foreign commerce. The use of the terms "employed by" and "associated with" appears to contemplate a person distinct from the enterprise.

*Id.* at 400.

The Court adopts the holding of *Computer Sciences* and its progeny and concludes that RICO requires that the defend-

ant be an entity separate and apart from the alleged enterprise. Interpretation of this complex statute must begin with the "plain meaning" of the words, which must be liberally construed to effectuate the remedial purposes of RICO. *Ora Corp. v. Vinson*, 596 F.Supp. 1546, 1547 (D.S.C. 1984) (citation omitted). However, a court may do more than "stare at the language," *Haroco*, 747 F.2d at 389, and interpretation of these words and their plain meaning may require reaching beyond to the logic of congressional intent. *See U.S. v. Turkette*, 452 U.S. 576 at 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246. It is apparent that Congress intended that the "enterprise" be separate from the defendant. The conclusion is consistent with RICO's focus on organized crime, which although need not suggest mobsters or underworld figures, does certainly imply a concert or group of activity. Further, the following which *Computer Sciences* has gathered in a brief span, and the number of cases which have independently reached the same conclusion, substantiate the soundness of the reasoning of *Computer Sciences*.

■ In the instant case, Plaintiff offers no serious challenge to the *Computer Sciences* decision, nor to its logic. Rather, her efforts have been directed toward "pleading around" the decision by alleging that the "enterprises" are her own trust account and the common trust fund of which it was a part. Plaintiff then argues that a trust is analytically separate from the trustee and *Computer Sciences* is therefore simply not controlling. Plaintiff contends that her trust, and the Income Common Trust Fund of SCN, satisfy either the "entity" concept or the "association in fact" concept of a RICO enterprise, rendering both sufficiently separate from the Defendant for purposes of RICO. *Computer Sciences* provided the general principle that a corporation may not engage in conduct actionable under RICO with an unincorporated division thereof, and applied this rule to the situation where the alleged enterprise was plainly a functioning unit of the corporate defendant. The principle enunciated in *Computer Sciences* is clearly applicable

in this case where the defendant bank and its trust department share identity with the trust fund and trust account which are the alleged enterprises.

A number of factors support the conclusion that the trusts alleged herein as enterprises do not enjoy an existence separate and apart from SCN for purposes of RICO. To begin with, the trust estate lacks a separate juristic personality. 76 Am.Jur.2d *Trusts* § 6 (1975). Moreover, a trustee is a *sine qua non* to the existence of a trust. *Id.*, § 32, at 279. The trustee is not a mere employee or agent of the trust beneficiaries, but acts for himself in the administration of the trust, under restraint of the instrument's terms and the law of trusts, and is bound by and liable upon obligations incurred and contracts made by him in the cause of administering the trust. *Id.*, § 351, at 565–66. Further, a trust account such as Plaintiff's is only a "proportionate *undivided* interest" in the larger fund. S.C.CODE ANN. § 34–21–330 (Law. Co-op. 1976) (emphasis added). The management and control of such an account is exclusive in the fiduciary (here SCN). S.C.CODE ANN. § 34–21–250 (Law.Co-op.1976). Ownership of the fund's assets is solely in the fiduciary and they are considered as assets held by it in that capacity. *Id.* While none of these factors considered alone establishes identity between a bank as a RICO defendant and a trust or trust fund of the bank as an enterprise, together they offer support for the conclusion that a trust and the corporate entity which administers it share a sufficiently mutual identity for purposes of a RICO cause of action. Accordingly, an application of *Computer Sciences* to this case mandates the entry of summary judgment on the RICO claim.

Many of the cases analyzing the separateness of the enterprise element have done so in the context of distinguishing it from the pattern of racketeering element. *See U.S. v. Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528; *Bennett v. Berg*, 685 F.2d at 1059–60; *Saine v. A.I.A., Inc.*, 582 F.Supp. at 1305. However, all of these decisions have required that there be a clearly "sepa-

rate existence" of the enterprise, that it be a structure separate, distinct and apart from the "pattern of racketeering activity." Such language is consistent with the conclusion in *Computer Sciences*, 689 F.2d at 1190.

It is of some significance in analyzing the issue of whether a RICO defendant may be "employed by or associated with" itself as a RICO enterprise, 18 U.S.C.A. § 1962(c), that the United States Supreme Court in *Copperweld Corp. v. Independence Tube Corp.*, —— U.S. ——, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), rejected the intra-enterprise conspiracy doctrine and held that a corporation may not conspire with its wholly owned subsidiary, or with a mere corporate division, to violate the Sherman Antitrust Act. *Id.*, 104 S.Ct. at 2742–44. In reaching this conclusion the Court focused upon the unity of interest of the parent company and the other entity in question, their "unity of purpose or common design," and the guidance of their objectives by a single corporate consciousness. In essence, the intra-enterprise conspiracy doctrine was rejected because it "looks to the form of an enterprise's structure and ignores the reality." *Id.* at 2743. The *Copperweld* decision lends support to this Court's conclusion that Plaintiff's attempted distinction between Defendant and the trusts is artificial.

Although the Court agrees with Defendant's analysis of the present factual situation, Defendant's position that a trust could under no circumstances be a RICO enterprise is without basis in either the language of the statute, *U.S. v. Turkette*, 452 U.S. at 576, 580, 101 S.Ct. at 2524, 2527 ("no restriction upon the associations embraced by the definition"), or in the nature of trusts, for "the trust device has been used for many different business purposes in recent years." *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 440 P.2d 105, 110 (1968); *see also*, 13 Am.Jur.2d *Business Trusts* §§ 3, 4 (1964); Isaacs, *Trusteeship in Modern Business*, 42 Harvard L.Rev. 1048, 1049 (1929).

Plaintiff's citation of instances where a trust qualifies as an entity for other purposes is unconvincing. For example, Plaintiff argues that a trust is sometimes viewed as a separate tax entity which is treated as an individual taxpayer for income tax purposes, and that it should therefore follow that a "separate entity" is a "separate entity." The argument overlooks the obvious preference of the Internal Revenue Code (the Code) for recognition of taxable persons and events, through legal fictions or otherwise. Furthermore, taxation of trusts under the Code "takes cognizance of the identity in interest of trustee and *cestui que trust.*" *Stone v. White*, 301 U.S. 532, 537, 57 S.Ct. 851, 853, 81 L.Ed. 1265 (1937). In short, Congress used terms and concepts of breadth in RICO because of the scope of the criminal and economic problems it sought to address. Many of these words have other business and legal applications with a broad history of interpretations in other contexts. In instances where helpful in construing RICO they should be used; where clearly inappropriate because of other particularized concerns, they should not. *See Russello v. U.S.*, 464 U.S. 16, 104 S.Ct. 296, 299–300, 78 L.Ed.2d 17 (1983) ("interest" subject to forfeiture under RICO is not limited to "profits" subject to forfeiture under other criminal statutes).

There is no question of fact as to the nature of the relationship between Defendant and the enterprises in question. The trusts alleged as enterprises had as their trustee the Defendant. Defendant's employees administered Plaintiff's trust, and the Income Common Trust Fund, in their capacity as employees of SCN under the aegis of SCN's corporate consciousness. Their alleged improper failure to disclose an erosion of Plaintiff's capital provided the basis for Plaintiff's RICO claim. In substance, the trusts in question came into existence and were administered as a part of Defendant's corporate activity, and the department which administered it was a functioning unit of Defendant. Looking beyond the form of Plaintiff's amended allegations to the reality of the issue before

the Court, it is clear that Defendant and its trust department, and the two trusts now alleged as enterprises, are not separate and distinct entities from Defendant, but constitute part of Defendant's corporate existence. As such, Defendant as the RICO "person" may not be employed by or associated with itself as the RICO "enterprise," through the fiction of the trusts it administers, any more than it could be said to conspire with itself, its departments or its other organizational subdivisions.

There being an identity of Defendant and enterprises, summary judgment is granted as to the RICO claim of the complaint. Plaintiff's pendent state claims are dismissed without prejudice.

AND IT IS SO ORDERED.