Anthony J. HATHERLEY and Vesta
Retirement Trust, Plaintiffs,

v.

PALOS BANK AND TRUST COMPANY,
an Illinois banking corporation,
Defendant.

No. 86 C 4237.

United States District Court,
N.D. Illinois, E.D.

Dec. 31, 1986.

Richard C. Jones, Jr., Morton Denlow, Dardick & Denlow, Chicago, Ill., for plaintiffs.

Richard H. Kane, Richard H. Kane & Associates, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

The matter before this court concerns defendant's motions to dismiss pursuant to Rules 9, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendant's motion is denied in part and granted in part.

### I. FACTS

On June 12, 1986, plaintiffs Vesta Retirement Trust (Vesta) and its trustee Anthony Hatherley filed a three-count complaint against defendant Palos Bank and Trust Company (Palos Bank) alleging common law fraud, breach of fiduciary duty and violation of 18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Vesta's claims

arise out of a series of transactions involving real estate held in land trusts at Palos Bank. According to Vesta's complaint, Palos Bank, as trustee, held legal title to real estate referred to as the "Lake Lots" for the benefit of Ronald Coco and Ann Crockett. The Lake Lots were the *res* of Trust 1–1961, and subject to a security interest held by Palos Bank. Coco and Crockett were also the sole beneficiaries of Palos Bank Trust 1–1689 which held legal title to Unit 23 of Hidden Lake Estates Condominiums. Sometime in October 1980, the Hidden Lake Corporation executed two promissory notes for $125,000 each to Vesta in consideration for a $250,000 loan. In further consideration, Coco and Crockett agreed to personally guarantee the two promissory notes and executed a collateral assignment of beneficial interest in Trust 1–1689 to secure the debt.

In April 1983, a new promissory note ("renewal note") payable to Vesta was executed by Coco, Crockett and John Ziola in the amount of $96,240.85 to replace the first of the two notes issued in October 1980. Coco and Crockett executed a collateral assignment of beneficial interest in Trust 1–1961 to Vesta to secure the renewal note. At the time the collateral assignment in Trust 1–1961 occurred, Palos Bank and Vesta entered into a release agreement establishing each party's respective interest in the proceeds from any future sale of the trust's *res*. The agreement designated that Palos Bank would receive the first $50,000 of net proceeds from the sale of any lot and two thirds of any sum above $50,000. Vesta was to receive one third of all proceeds above $50,000 per lot. The agreement specified that upon receipt of an executed offer from a bona fide purchaser for any of the lots held in the trust, Vesta would have a right of first refusal for a period of ten days after notification by Palos Bank. If Vesta failed to indicate its intention to purchase the lot on identical terms before expiration of the ten days, Vesta's interest in such lot or lots would automatically terminate, thus allowing Palos Bank to transfer an unincumbered interest to the prospective purchaser.

Subsequently, the makers and guarantors of the renewal note and remaining October 1980 note failed to pay, and default occurred. Procedures under the Illinois Commercial Code were instituted, and on November 9, 1984, after public auction, Vesta was declared to be the purchaser of the beneficial interest of the two trusts for the following amounts:

(A) One hundred percent of the beneficial interest in Trust 1–1689 .. $258,865.43
(B) One hundred percent of the beneficial interest in Trust 1–1961 subject to prior collateral assignment to Palos Bank ......... $119,088.05

On December 18, 1984, Palos mailed notice to Vesta that a firm offer by a bona fide purchaser had been received and that Vesta could exercise its option to purchase the Lake Lots at a minimum price of $50,000 per unit. Vesta declined to exercise the option and allowed its interest in Trust 1–1961 to expire.

Vesta alleges, however, that no such bona fide offer was ever received by Palos Bank and that as a result Vesta was defrauded out of its interest in Trust 1–1961 to the sum of $119,088.05. Vesta asserts that Palos Bank engaged in and perpetrated the following scheme to defraud:

(a) Induced Vesta to renew the loans in the aggregate principal sum of $250,000 to Hidden Lake Corporation, Ronald R. Coco, Ann Crockett and John Ziola ("Borrowers"), which upon renewal was additionally secured by a subordinate collateral assignment of the beneficial interest in Palos Trust 1–1961; knowing that Palos Bank held a prior collateral assignment of beneficial interest, that the indebtedness secured by the prior collateral assignment was in default, and that the aggregate balance of the secured indebtedness exceeded the value of the Lake Lots, without disclosing these facts to Vesta;

(b) Induced Vesta to execute the Release Agreement with reference to the Lake Lots;

(c) Permitted interest to accrue on the prior secured indebtedness without demanding payment from the Borrowers, and without notice to Vesta;

(d) Failed to require the Borrowers to pay real estate taxes affecting the Lake Lots or to notify Vesta that such real estate taxes were not paid;

(e) Sent a 10–day notice to Vesta on December 18, 1984, stating that Palos Bank had received a bona fide firm offer to purchase the Lake Lots and that Vesta could exercise its option to purchase the Lake Lots at a minimum price of $50,000 per unit, knowing that no such bona fide offer had been received;

(f) Induced Vesta to dismiss the suit to confirm the commercial code sale with prejudice and to release the Borrowers from personal liability by executing and sending through the United States mail, a Trustee's Deed, and a Release of the Assignment of Rents for Unit 23 in the Hidden Lake Estates.

## II. DISCUSSION

Palos Bank motions to dismiss Counts I and II of Vesta's complaint pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Palos Bank argues that Count I, which is based on common law fraud, should be dismissed because of Vesta's failure to plead the alleged fraud with the particularity demanded by Rule 9(b). As Count II alleges the same fraud constituted a breach of Palos Bank's fiduciary duty to Vesta, the defendant bank argues Count II must fail for the same Rule 9(b) inadequacies.

Palos Bank asserts that Vesta failed to plead the essential elements of common law fraud. Under Illinois law, a plaintiff asserting a cause of action for common law fraud must allege each of the following elements: (1) a representation or a statement of material fact as opposed to a promise or opinion; (2) the representation must be false; (3) the representation must be shown or believed to be false by the party making it; (4) there must be action by the other party in reliance on the truth of the

statement; (5) the representation must have been made to another with the intent to induce the other party to act; and (6) there must be damage to the other party resulting from such reliance. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1347 (7th Cir. 1983); *Solues v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980).

A careful review of Vesta's complaint, however, shows each of the six elements were pled with sufficient particularity. The complaint alleges (1) that Palos Bank made a representation of material fact (i.e., that Palos Bank received a bona fide offer to purchase the Lake Lots) as contained in the notice dated December 18, 1984, to Vesta; (2) that the facts stated in the notice were false and known by the officers and agents of Palos Bank to be false at the time it was sent; (3) that the notice was sent by Palos Bank with the intent to induce Vesta not to act (pursuant to the release agreement) and thereby lose the security interest in Trust 1–1961; (4) that Vesta relied upon the notice and thereafter dismissed the suit to confirm the commercial code sale with prejudice, and release the borrowers from personal liability; and (5) that Vesta sustained actual damages of $119,088.05, by reason of the foregoing acts. As the complaint meets the requirements of Rule 9(b), Palos Bank's motion to dismiss Counts I and II is denied.

Palos Bank also motions to dismiss Count III of Vesta's complaint which asserts the conduct of Palos Bank violated provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Palos Bank attacks Vesta's civil RICO claim on two grounds. First, Palos Bank contends that the complaint fails to allege "enterprise" separate and apart from the "person" who perpetrated the alleged scheme to defraud. Second, Palos Bank argues that Vesta's complaint does not state sufficient allegations to constitute a pattern of racketeering activity. Palos Bank's arguments will be addressed in turn.

Vesta's third claim for relief does not state the precise sections of civil RICO which Palos Bank allegedly violated. As this court is required to construe the complaint in the light most favorable to the plaintiff, this court will analyze Count III of Vesta's complaint as asserting claims under §§ 1962(a) and (c). According to Section 1962(a), a "person" is prohibited from using or investing income or proceeds of income from a pattern of racketeering activity in the acquisition of an interest in or establishment or operation of an "enterprise." 18 U.S.C. § 1962(a). Section 1962(c) prohibits a "person" employed by or associated with an "enterprise" to conduct such "enterprise's" affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Palos Bank asserts that the language of both RICO provisions requires that the person and the enterprise to be distinct entities. Since Vesta alleges Palos Bank to be both the person and the enterprise, Palos Bank argues Count III must be dismissed.[1]

 Analyzing Palos Bank's argument in light of recent Seventh Circuit rulings, this court is compelled to dismiss any claim asserted under § 1962(c). In *Masi v. Ford City Bank*, the Seventh Circuit addressed the issue of whether a corporation could be both the "person" and "enterprise" for purposes of pleading a claim under civil RICO. *Masi v. Ford City Bank*, 779 F.2d 397, 401 (7th Cir.1985). Citing its earlier ruling in *Haroco v. American Nat'l. Bank and Trust Co. of Chicago*, 747 F.2d 384, the court reaffirmed that the language in § 1962(c) requires that the person and enterprise be distinct entities. *Masi*, 779 F.2d at 401, *citing Haroco*, 747 F.2d at 400–02. As explained in *Haroco*, the terms "employed by" and "associated with" in § 1962(c) plainly indicate that the person and enterprise must be separate individuals. *Haroco*, 747 F.2d at 400. However, "subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and enterprise must be separate." *Masi*, 779 F.2d at 401, *quoting Haroco*, 747 F.2d at 402. Reviewing subsection (a), the court noted that a person (such as a corporation-enterprise) can violate RICO if it receives income from a pattern of racketeering activity in which the person has participated as a principle and if the person uses the income in the establishment or operation of an enterprise. *Masi*, 779 F.2d at 401; *Haroco*, 747 F.2d at 402. Thus, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. *Id.* Accordingly, the court concluded that § 1962(a) permitted the person and enterprise to be the same entity. *Id.*

Turning to the allegations in the present case, § 1962(a) could be analyzed as a basis for relief since Palos Bank allegedly profited from its alleged scheme to defraud Vesta and conceivably used such proceeds in the operation of its business. However, Vesta's claim under § 1962(c) cannot withstand Palos Bank's motion to dismiss as *Masi* and *Haroco* clearly hold that the person and enterprise must be separate entities. Thus, Palos Bank's motion is granted with regard to § 1962(c) and denied with regard to § 1962(a).

Finally, Palos Bank attacks Vesta's RICO claim claiming Vesta failed to allege sufficient acts to constitute a pattern of racketeering activity. Section 1961(5) of RICO defines a pattern of racketeering activity as requiring at least two acts of racketeering activity occurring within ten years of each other. 18 U.S.C. 1961(5). In Vesta's complaint, Palos Bank is alleged to have committed several acts of mail and wire fraud in perpetrating its alleged scheme to defraud Vesta. Palos Bank essentially argues that Vesta's allegations are deficient because the purported acts of mail and wire fraud were not pled with

1. Although Vesta argues that Palos Bank Trust 1–1961 is a separate legal entity from Palos Bank, such a position was expressly rejected in *Witt v. South Carolina Nat'l. Bank*, 613 F.Supp. 140, (C.D.S.Car.1985). (A trust and the corporate entity which administers it share a sufficiently mutual identity for purposes of a RICO cause of action.) This court finds the reasoning in *Witt* persuasive and rejects Vesta's contention of separate entities.

sufficient particularity. However, this court has already determined that Vesta has stated its fraud claim with the specificity required by Rule 9(b). Thus, the issue raised by Palos Bank is whether a "pattern" of mail and wire fraud is properly alleged by Vesta.

In the recent decision of *Morgan v. Bank of Waukegan,* the Seventh Circuit announced that something more than an allegation of two acts of racketeering activity is required to assert a "pattern" under § 1961(5). *Morgan v. Bank of Waukegan,* 804 F.2d 970, 973–77 (7th Cir.1986). Expanding on comments by the Supreme Court in *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Seventh Circuit ruled that to adequately allege a pattern of racketeering activity, continuity and relationship among the predicate acts must be alleged. *Morgan,* 804 F.2d at 975. By relationship, the court meant that the predicate acts were to occur relatively close in time to each other, involve the same victim or involve the same type of activity. *Id.* Continuity according to the court, embraces the idea that the predicate acts occur at different intervals of time or involve different victims so as to be viewed as constituting separate transactions. *Id.* In analyzing whether the predicate acts were committed with sufficient continuity, the court instructed that the following factors be weighed: (1) the number and variety of predicate acts, (2) the length of time over which such acts were committed, (3) the number of victims, (4) the presence of separate schemes, and (5) the occurrence of distinct injuries. *Id.* at 975. Acknowledging that the concepts of relationship and continuity are "somewhat at odds with one another," the court emphasized that no one factor could be viewed as necessarily determinative. *Id.* at 975–76. Instead, the determination of whether a pattern of racketeering activity has been sufficiently alleged must turn on the facts and circumstances in each case. *Id.* at 976.

Turning to the facts in the present case, Vesta asserts three specific acts of mail fraud were committed by Palos Bank in furtherance of its scheme to defraud Vesta:

(a) On or about December 10, 1984, Palos Bank mailed a 10–day notice to Vesta;

(b) On or about February 26, 1985, Palos Bank mailed a Trustee's Deed conveying Unit 23 in the Hidden Lake Estates Condominium;

(c) On or about April 19, 1985, Palos Bank mailed a Release of the Assignment of Rents as to Unit 23 in the Hidden Lake Estates Condominium.

Relating these acts to the first consideration announced in *Morgan,* little doubt exists that the alleged acts of mail fraud satisfy the relational leg of the pattern analysis. The acts involved the same victim (Vesta) and occurred in a somewhat contained time period (five and a half months). However, more difficulty is encountered in establishing sufficient continuity among the predicate acts of mail fraud. Although a sufficient number of predicate acts is alleged by Vesta, each of the specifically alleged racketeering acts involve the same type of activity: mail fraud. Giving Vesta the benefit of its general allegations of wire fraud on the part of Palos Bank, although not pled with extreme particularity, it is arguable that more than one type or variety of racketeering activity exists in the present case. Similarly, although the three specifically noted acts of mail fraud allegedly occurred over a relatively short period of time (i.e., five and a half months), the complaint alleges activity occurring as early as April 1983 which Vesta claims involved acts of wire fraud on the part of Palos Bank.[2] When viewing all the racketeering activity alleged in the complaint, the asserted acts of mail and wire fraud did occur over a substantial period of time.

---

**2.** In April 1983, Vesta alleges Palos Bank induced Vesta to renew loans to Coco and Crockett and enter into a release agreement with Palos Bank. The inducements to renew the loans and execute the release agreement are asserted to be among the most critical acts by Palos Bank in perpetrating its scheme to defraud Vesta.

No question exists that the alleged acts were in furtherance of a single scheme and that Vesta was the sole victim of the scheme. However, in analyzing whether distinct injuries occurred, Palos Bank's alleged acts of mail fraud arising out of mailings concerning Trust 1–1689 present some confusion. On one hand, Vesta asserts that Palos Bank perpetrated a scheme to defraud Vesta of its interest in Trust 1–1961 which resulted in a loss to Vesta of $119,088.05, the value of its interest in Trust 1–1961. On the other hand, Vesta asserts that Palos Bank fraudulently induced Vesta to dismiss suit to confirm the commercial code sale of beneficial interest in Trust 1–1689 to Vesta and fraudulently induced Vesta to release Coco and Crockett of personal liability on the debt owed to Vesta which they guaranteed.

The alleged acts of mail fraud concerning Trust 1–1689 occurred when Palos Bank mailed a trustee's deed and release of assignment of rents in all the real estate forming the *res* of Trust 1–1689. Since Vesta does not assert any injury to its interest in Trust 1–1689 arising from the alleged acts of mail fraud, the relevance of transactions involving Trust 1–1689 to the damage claimed by Vesta is not easily discernable from the complaint.

Upon a closer analysis, however, it appears the alleged acts of mail fraud concerning Trust 1–1689 may have contributed to the loss sustained because the collateral assignment of beneficial interest in Trust 1–1689 secured all debts Coco and Crockett owed Vesta. Since Vesta's interest in Trust 1–1961 stemmed from a loan made by Vesta which was guaranteed by Coco and Crockett, a fraudulent inducement to dismiss a suit with prejudice to confirm the commercial code sale of the beneficial interest of Trust 1–1689 to Vesta may have reduced the ability of Vesta to recover any part of the $119,088.05 it lost when its interest in Trust 1–1961 extinguished. Moreover, the alleged inducement to release Coco and Crockett of personal liability on the debt owed Vesta also diminished Vesta's capacity to recover the $119,088.05 allegedly lost by Vesta.

The upshot of the foregoing discussion is that the specifically alleged acts of mail fraud were distinct. The notice sent to Vesta that an offer had been received to purchase the lake lots when allegedly no such offer was received operated to deprive Vesta of its interest in Trust 1–1961. The mailings that occurred regarding the conveyance of real estate held in Trust 1–1689 allegedly were part of a scheme which resulted in a loss of additional collateral securing the loans as well as release of personal liability to repay the loans by Coco and Crockett. Thus, two distinct injuries are alleged by Vesta. Although the alleged pattern of racketeering activity involved a single victim and a single scheme, the variety of predicate acts, the length of time over which the acts occurred, and the existence of distinct injuries shows sufficient continuity among the alleged predicate acts to withstand scrutiny under the test set forth in *Morgan*. Since Vesta's allegations show sufficient continuity and relationship among the asserted acts of mail and wire fraud, a pattern of racketeering activity is properly pled, and Palos Bank's motion to dismiss is denied.

## III. CONCLUSION

For the reasons stated herein, defendant's motion to dismiss plaintiffs' claims predicated on 18 U.S.C. § 1962(c) is granted. Defendant's motion to dismiss plaintiffs' remaining RICO and state law claims is denied.

IT IS SO ORDERED.