**AMERICAN BONDED WAREHOUSE CORP., a corporation, d/b/a Asian Airlift, Plaintiff,**

v.

**COMPAGNIE NATIONALE AIR FRANCE, d/b/a Air France, a corporation of France, Francois Bachelet, and Joe Miller, Defendants.**

No. 86 C 4780.

United States District Court,
N.D. Illinois, E.D.

Feb. 17, 1987.

George B. Collins, Donald L. Bertelle, Deborah M. Jervis, Collins, Uscian & Bertelle, Chicago, Ill., Theodore J. Jarz,

McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, Joliet, Ill., for plaintiff.

Michael J. Sehr, Andrew Kochanowski, Haskell & Perrin, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

This order concerns defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion is denied in part and granted in part.

## I. FACTS

American Bonded Warehouse Corporation ("Asian Airlift") is one of several companies comprising an industry of freight forwarders specializing in consolidating shipments from people residing in America to their relatives and friends in Vietnam. After receiving packages from persons in America, freight forwarders such as Asian Airlift assemble the packages into containers and deliver them to Compagnie Nationale Air France ("Air France") for shipment to Vietnam. Because Air France is the only western airline having landing rights at Ho Chi Minh City (formerly Saigon), all freight forwarders, including Asian Airlift, utilize Air France to make their shipments to Vietnam.

Plaintiff Asian Airlift alleges that sometime in late 1985 or early 1986, defendant Air France, through its employees, defendants Francois Bachelet, Joe Miller, and others, determined that Air France would enter the freight consolidation and forwarding industry, eliminate all the existing companies in the industry, including Asian Airlift, and thereby obtain an absolute vertical monopoly on the entire commercial process of sending gift packages from this country to Vietnam. Plaintiff asserts that defendants devised and engaged in a continuous series of related fraudulent schemes in violation of sections 1962(a) and (c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. According to plaintiff, defendants' wrongful conduct included publishing, circulating, and mailing two different documents that made false statements about freight forwarders as well as engaging in false advertising in Vietnamese newspapers to the detriment of Asian Airlift and other freight forwarders.

## II. DISCUSSION

Defendants assert several reasons why plaintiff's complaint fails to state a claim upon which relief can be granted. Initially, defendants argue they are entitled to immunity from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 et seq. ("FSIA"). The FSIA essentially provides that, subject to certain exceptions, a foreign state is immune from the jurisdiction of courts in the United States. A foreign state is defined in § 1603 of the FSIA, to include

... an agency or instrumentality of a foreign state ... which is a separate legal person, corporate or otherwise ... a majority of whose shares or other ownership interest is owned by a foreign state ... which is neither a citizen of the United States ... nor created under the laws of any third country.

Defendant Air France, a French corporation which is 98 percent owned by the Republic of France, is a foreign state under § 1603 and, therefore, is entitled to the protection afforded by the FSIA. Defendants Francois Bachelet and Joe Miller, sued in their respective capacities as employees of Air France, are also protected by the FSIA. *Rios v. Marshall*, 530 F.Supp. 351, 371, 374 (S.D.N.Y.1981) (official of British West Indies Central Labour Organization, an instrumentality of the named states, held equally protected under the FSIA).

However, § 1605 outlines various exemptions to the jurisdictional immunity of a foreign state, one of which is directly applicable to the instant case. Section 1605(a)(2) specifically exempts a foreign state from immunity in any case "in which the action is based upon a commercial activity carried on in the United States by the

foreign state...." This exception recognizes that sovereign immunity should be confined to a foreign sovereign's truly governmental acts and not extended to strictly commercial activities. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488, 103 S.Ct. 1962, 1968, 76 L.Ed.2d 81 (1983). Commercial activity is defined in § 1603(d) of the FSIA as

either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

Under § 1603(e), commercial activity is carried on in the United States by a foreign state when there is "substantial contact with the United States."

■ In the instant case, the complaint alleges that defendants implemented a scheme to eliminate its competition in the freight forwarding industry in violation of RICO. Such allegations clearly set forth a cause of action based on commercial activity conducted by the defendants. Therefore, defendants are not entitled to jurisdictional immunity under the FSIA.

■ Next, defendants argue that Air France, as an instrumentality or agency of a foreign sovereign, is not a person under RICO. RICO defines person to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). On its face, this definition clearly includes Air France. Therefore, defendants have the burden of showing that the statutory language should be interpreted differently than its plain and literal meaning.

In support of their claim that person as defined in RICO should be narrowly construed so as to exclude an agency or instrumentality of a foreign sovereign, defendants advance three arguments. First, defendants argue that Air France is not involved in the "organized crime" which Congress intended to fight with RICO and that nothing in RICO's legislative history suggests that it is applicable to a foreign state.

This court finds defendants' argument unpersuasive. A nexus with organized crime is simply not a requirement of a RICO violation. *Bennett v. Berg*, 685 F.2d 1053, 1063–64 (8th Cir.1982), *aff'd on reh. en banc*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 20–21 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Examining the plain language of the statute makes clear that the broad definition of "person" drafted by Congress does not exempt instrumentalities of a foreign sovereign or limit "persons" to those connected with "organized crime." *Lode v. Leonardo*, 557 F.Supp. 675, 680 (N.D.Ill. 1982). Similarly, the legislative history of RICO fails to support any such exemption or limitation. With RICO, "Congress chose to attack the problem of organized crime in terms of patterns of behavior characteristic of racketeers rather than attempt definition of the amorphous concept 'organized' crime and to make membership therein unlawful." *Hunt International Resources Corp. v. Binstein*, 559 F.Supp. 601, 602 (N.D.Tex.1982). Thus, RICO must be given the broad effect mandated by its plain language. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir.1986).

Second, defendants argue that since RICO is ostensibly modeled after antitrust laws under which the Supreme Court has determined a foreign sovereign cannot be liable, a similar interpretation of RICO should follow. Defendants rely on *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), which holds that a domestic sovereign is not a person who may be sued under antitrust laws, and subsequent cases expanding the *Parker v. Brown* doctrine to include foreign sovereigns. However, even assuming, *arguendo*, that there is a close relationship between RICO and antitrust laws which suggests that RICO provisions should be interpreted consistent with antitrust law, defendants are still "persons" amenable to suit. In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) and *La-*

*fayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the Supreme Court made it clear that the *Parker v. Brown* doctrine is limited to state action or official action by the state. Moreover, none of the post-*Goldfarb* cases on which defendants rely that expand the *Parker v. Brown* doctrine to include foreign sovereigns exempts foreign sovereigns from liability under antitrust laws for activity which is not cognizable as an act of state.[1]

In the instant case, Air France is clearly not acting pursuant to any state directive or engaged in any state action. Rather, it is acting independently as a commercial corporation. The mere fact that nearly all of the corporation's stock is owned by the French government does not make all of its actions "acts of state." *U.S. v. Deutches Kalisyndikat Gesellschaft,* 31 F.2d 199 (S.D.N.Y.1929). Even if this court were to adopt defendants' argument concerning the application of *Parker v. Brown* to RICO actions, Air France would still be a "person" amenable to suit because the conduct complained of does not constitute an act of state. Thus, any relationship between antitrust law and RICO is no help to defendants in claiming that Air France is not a "person" under RICO.[2]

Third, defendants claim that interests of comity dictate that a foreign sovereign should not be considered a person under RICO. As previously discussed, a foreign sovereign or an agency thereof is not afforded immunity from suit under the Foreign Sovereign Immunities Act when the suit is based on its commercial activity conducted in the United States. 28 U.S.C. § 1605(a)(2). Nevertheless, defendants contend that Air France should not be amenable to suit under RICO because a RICO claim, by its nature and its name, has an increased potential to interfere with for-

eign relations and to "touch much more sharply on national nerves" than other claims. However, defendants offer no compelling justification for this court to carve out such a broad exception to the commercial activity exemption in the FSIA, nor do the particular circumstances of this case justify recognizing any such exception for Air France. The instant action is not predicated on any act of State but, rather, is based on the commercial acts of a foreign corporation. Thus, defendants' assertion that this case involves sensitive matters of foreign relations with which this court should not interfere is meritless.

In sum, defendants do not offer any sufficient justification for interpreting the definition of "person," as set forth in § 1961(3) of RICO, differently than its literal meaning. Accordingly, because Air France falls within that definition on its face, Air France is a person amenable to suit under RICO.

Defendants' final set of arguments in support of their motion to dismiss focus on the sufficiency of plaintiff's complaint in stating RICO violations. Specifically, defendants assert that plaintiff's complaint (1) fails to allege a pattern of racketeering activity because there are no allegations of an ongoing course of conduct or more than one single scheme; (2) improperly sets forth Air France as both the enterprise and the liable person; and (3) improperly asserts *respondeat superior* liability under RICO.

Recently, in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), the Seventh Circuit held that plaintiff must show continuity plus relationship between the predicate acts for the pattern requirement to be satisfied. *Id.* 804 F.2d at 975. The court defined "continuity" and "relationship" as follows:

**1.** *See Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 77–78 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977); *Rios v. Marshall,* 530 F.Supp. 351, 372 n. 22 (S.D.N.Y.1981); *International Ass'n. of Machinists v. O.P.E.C.,* 477 F.Supp. 553, 570 n. 17 (1979), *aff'd,* 649 F.2d 1354 (9th Cir.1981).

**2.** This court makes no determination as to the validity of the alleged relationship between RICO and antitrust law or whether such a relationship, if found to exist, would require that RICO be construed consistent with the interpretation of antitrust law.

Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. To focus excessively on either continuity or relationship alone effectively negates the remaining prong. *Id.*

Under this definition of pattern of racketeering, the court held that "the predicate acts must be ongoing over an identified period of time so that they can be fairly viewed as constituting separate transactions, i.e. transactions somewhat separated in time and place." *Id.* However, the court held that there is no requirement that the predicate acts occur as part of separate schemes. *Id.* Rather, the presence of separate schemes, along with the number and variety of predicate acts and the length of time over which they were committed, the number of victims, and the occurrence of distinct injuries were identified by the court as relevant factors in determining whether sufficient continuity exists for a pattern of racketeering to exist. *Id.*

■ Applying this test for a pattern of racketeering to the instant case, plaintiff's complaint alleges a sufficient pattern of racketeering. Plaintiff asserts that Air France, through its employees, Joe Miller, Francois Bachelet and others, performed several fraudulent acts to effectuate a scheme to eliminate Asian Airlift and other freight forwarders from the freight forwarding industry. Plaintiff's allegations that these fraudulent acts were accomplished through the use of the mail and telephone in violation of the mail fraud[3] and wire fraud statutes[4] brings its claim within the explicit statutory requirements for a pattern of racketeering under 18 U.S.C. § 1961(1), (5). Plaintiff's claim that the defendants committed these fraudulent acts with a common design and motive, to eliminate its competition in the Vietnamese freight forwarding industry, in order to injure the same victims, plaintiffs and other freight forwarders, within a relatively short period of time, approximately four to six months, establishes a sufficient relationship for the purposes of a pattern of racketeering.

■ Such allegations also satisfy the continuity requirement. According to the complaint, defendants published a document containing false statements about freight forwarders such as plaintiff and circulated it in late 1985 or early 1986. Subsequently, defendants prepared and distributed a second document containing more false statements about freight forwarders. Later, in April 1986, defendants placed an advertisement that contained misstatements about freight forwarders in two different Vietnamese newspapers. These allegations, viewed in the light most favorable to plaintiff, sufficiently satisfy the relevant factors for determining continuity set forth in *Morgan.* The acts of publishing and circulating two fraudulent documents and placing a false advertisement in two separate newspapers constitute a sufficient number and variety of predicate acts. The length of time within which these acts were committed, approximately four to six months, although not nearly as long as in *Morgan* (nearly four years) is sufficiently long for the purposes of continuity. *See Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir. 1985) (nine months); *Hatherley and Vesta Retirement Trust v. Palos Bank and Trust Co.,* 650 F.Supp. 832 (N.D.Ill.1986) (five and a half months). Finally, plaintiff alleges distinct injuries. Plaintiff claims that each predicate act resulted in damage to the good will of its business as well as lost income from reduced sales. In addition, other freight forwarders were allegedly injured by defendants' acts. All of these factors combine to show sufficient continuity. Although the predicate acts were committed in furtherance of a single scheme, that fact by itself does not indicate

3. 18 U.S.C. § 1343.

4. 18 U.S.C. § 1343.

a lack of continuity. *Morgan*, 804 F.2d 975. Thus, Asian Airlift has sufficiently pled a pattern of racketeering.

Defendants also argue, however, that Counts II and III of plaintiff's complaint, which allege violations of § 1962(c), are defective in that they improperly set forth Air France as both the enterprise and a liable person. In *Masi v. Ford City Bank and Trust Co.*, 779 F.2d 397 (7th Cir.1985), the Seventh Circuit held that a corporation cannot be both the person and the enterprise in a § 1962(c) RICO claim. *Masi*, 779 F.2d at 401–02, citing *Horoco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 400–02 (7th Cir. 1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Thus, each count of plaintiff's complaint alleging that Air France is both the enterprise and the liable person under § 1962(c) must be dismissed.

Count II of the complaint, while praying for relief against Air France as a liable person under § 1962(c), does not allege that Air France is the enterprise. Count II alleges that Miller, Bachelet and Air France together constituted an "association in fact enterprise" and that each defendant is a liable person as a member of that enterprise. This claim is logically inconsistent. Nowhere in the complaint does Asian Airlift allege that Miller and Bachelet acted independently of Air France. Rather, the allegations indicate that these defendants acted at all times within the scope of their employment. Because all of their acts were on behalf of Air France, Bachelet and Miller could not associate in fact with Air France to form an "association in fact enterprise." Therefore, because no association in fact is logically established in the complaint, Count II must be read as alleging Air France as both the enterprise and the person. Under *Masi* and *Horoco*, such allegations are insufficient to establish a § 1962(c) violation. Accordingly, defendants' motion to dismiss Count II is granted.

Count III of the complaint also alleges that Air France is both the enterprise and the person liable. However, pursuant to plaintiff's request, this court grants plaintiff leave to amend Count III of its complaint so as to correct its typographical error by praying for relief against Bachelet and Miller. With Count III so amended, there is no person/enterprise problem.

Finally, defendants contend that Count IV, which alleges a violation of § 1962(c), is an insufficient RICO claim because there is no *respondeat superior* liability under § 1962(c). This argument is clearly the rational and the majority position. *Schofield v. First Commodity Corporation of Boston*, 793 F.2d 28, 32 (1st Cir.1986); *Horoco*, 747 F.2d at 401 n. 18. To hold otherwise would annihilate the person/enterprise distinction outlined in § 1962(c) and upheld in *Masi* and *Horoco*. *Northern Trust Bank/O'Hare v. Inryco*, 615 F.Supp. 828, 835 (N.D.Ill.1985). Therefore, defendants' motion to dismiss is granted with respect to Count IV.

### III. CONCLUSION

For the reasons stated herein, defendants' motion to dismiss is denied with respect to plaintiff's § 1962(a) claim against Air France (Count I) and plaintiff's amended § 1962(c) claim against Joe Miller and Francois Bachelet (Count III). Defendants' motion to dismiss is granted with respect to plaintiff's § 1962(c) claim against Air France (Count II) and plaintiff's § 1962(c) *respondeat superior* claim against Air France (Count IV).

IT IS SO ORDERED.