**Margaret MORGAN and Burton Morgan, Plaintiffs-Appellants,**

v.

**BANK OF WAUKEGAN, a banking corporation, et al., Defendants-Appellees.**

No. 85–2675.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1986.

Decided Oct. 23, 1986.

Rehearing and Rehearing En Banc Denied Nov. 20, 1986.

---

Kenneth K. Ditkowsky, Ditkowsky & Contorer, Chicago, Ill., for plaintiffs-appellants.

Michael L. Sherman, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, FLAUM, and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

This case comes to us on appeal from the district court which dismissed the complaint of plaintiffs Burton and Margaret Morgan for failure to state a claim against defendants Bank of Waukegan ("the Bank"), John Crim (a loan officer at the Bank), Robert Dubin, Morton Goldsmith, Ausbin Godbolt, Eric Enterprises, Sheldon Lovinger, and other unknown defendants, 615 F.Supp. 836. Plaintiffs' complaint had two counts based on the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, as well as several pendent state claims. For the reasons stated herein, we reverse the district court's dismissal of plaintiffs' complaint.

I

The facts as alleged by plaintiffs are somewhat muddled but are basically as follows. In April 1978, defendants Robert Dubin, Morton Goldsmith, and Arnold Shifrin (Shifrin has been discharged in bankruptcy and is not a party to this suit) formed a series of corporations: Grand Drugs, Inc., Glen Flora Drugs, Inc., SDM, Inc., and Utica Pharmacy, Inc. Goldsmith then introduced plaintiffs to Dubin, Lovinger, and Shifrin. Goldsmith, Dubin, and Lovinger made various allegedly false representations to plaintiffs in order to induce them to invest in a series of corporations (referred to as the "venture"), to guarantee loans of the venture, and to use their home as additional security for the venture. In other words, plaintiffs were allegedly induced to give both money and credit to the venture, including the equity in their home. Mailings were made in connection with the obtaining of the loan.

Subsequently the defendant Bank became involved in this venture. Specifically,

the Bank agreed to lend money to the venture, which at that time consisted of SDM Pharmacy, Grand Drugs, and Glen Flora Drugs. To secure plaintiffs' credit for these loans, the Bank required them to enter into a land trust agreement, convey a beneficial interest in their home to the Bank, and sign various guarantees.

By August 7, 1980, the venture was in default. Plaintiffs claim that much of the assets of the venture were then removed by Dubin and Goldsmith, with the knowledge and consent of the Bank and defendant Crim, to the premises of Utica Pharmacy (Utica Pharmacy was not a party to the loan). The next day defendant Godbolt formed Waukegan Drugs, and at a foreclosure sale conducted by the Bank and Crim, it purchased the remaining assets of the venture. Mailings were made as part of this foreclosure sale. The Bank loaned money to Godbolt and took back a note and a security interest in the remaining assets of the venture.

The same scenario was repeated seventeen months later. Waukegan Drugs defaulted on its August 1980 loan in January 1982. Once again, with the Bank's assistance, Godbolt formed a new corporation, defendant Eric Enterprises, and it purchased the assets of Waukegan Drugs at a second foreclosure sale. Once again, several mailings occurred as part of the foreclosure sale. A deficiency remained, however, and in December 1982 the Bank and Crim commenced an action to assume ownership of plaintiffs' home in order to repay this debt.

II

Section 1964 of RICO[1] enables a private plaintiff to bring a civil suit based on a violation of Section 1962. In the instant case, each of plaintiffs' two civil RICO counts attempt to state claims under both Section 1962(a) and Section 1962(c). A violation of Section 1962(a) requires the receipt of income from a pattern of racketeering, and the use of that income in the

1. All statutory references herein cited in this form refer to Title 18 of the United States Code.

operation of an enterprise. *Masi v. Ford City Bank and Trust Co.*, 779 F.2d 397, 401 (7th Cir.1985). A violation of Section 1962(c) requires conduct of an enterprise through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346. In both Sections, a crucial element of the claim is the existence of a pattern of racketeering activity.

Plaintiffs' first civil RICO claim is against defendants Dubin, Goldsmith, and Godbolt and is made under both Sections 1962(a) and 1962(c). Both of these subsections of Section 1962 require plaintiff to show a pattern of racketeering activity and an enterprise, although the precise relationship between these two elements is somewhat different in each subsection. For purposes of Section 1962(a), plaintiffs allege that the enterprises are the Bank and Utica Pharmacy. For purposes of Section 1962(c), plaintiffs allege that the enterprises are the same two entities plus Grand Drugs, Glen Flora Drugs, and SDM. For purposes of both Sections, plaintiffs allege that the pattern of racketeering activity consisted of various acts of mail fraud committed over a four-year period. In particular, plaintiffs point to an April 1978 mailing to plaintiffs made in connection with the loan obtained by defendants, and mailings in both August 1980 and January 1982 made in connection with the foreclosure sales that took place at those points in time. Plaintiffs' second RICO claim is against defendants Godbolt, Dubin, and Goldsmith and is also made under both Sections 1962(a) and 1962(c). In this claim the enterprises are the Bank and Eric Enterprises, and the pattern of racketeering activity again depends in large part on various acts of mail fraud committed in connection with the foreclosure sales.

The precise reason for the dismissal by the court below is not clear. The court at least in part seemed motivated by the sloppiness of the third amended complaint and the failure of plaintiffs to articulate their allegations so as to display how each requirement of a civil RICO claim was met. But the main reason for the dismissal appeared to be plaintiffs' supposed failure to allege a pattern of racketeering activity. This reasoning gives us our first chance to comment on this very important development in the statutory construction of RICO which has occurred largely in the year since the Supreme Court handed down its decision in *Sedima* on July 1, 1985.

As noted above, this case comes to us following the district court's grant of defendants' motion to dismiss the plaintiffs' third complaint for failure to state a claim. Upon a motion to dismiss under Fed.R. Civ.P. 12(b)(6), plaintiffs' allegations must be accepted as true. A complaint can be dismissed for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiffs' allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59; *Doe v. Saint Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir.1986). With both the structure of a civil RICO claim and this legal standard under Rule 12(b)(6) in mind, the question is whether plaintiffs have sufficiently stated a claim upon which relief can be granted.

### III

The expansiveness of civil RICO is well illustrated by the filing of the instant case and *United States v. Yonan*, 800 F.2d 164 (7th Cir.1986). Plaintiffs have essentially alleged that defendants defrauded them. Without RICO, persons who have been defrauded in this manner would have to rely on state law remedies as a basis for a suit. However, the tremendous breadth of the language of civil RICO has caused a large number of these so-called "garden variety" fraud claims to be brought in federal court. Of the 270 district court RICO cases prior to 1985, 37% involved common law fraud in a commercial or business setting. Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law 55–56 (1985) (cited by *Sedima*, 105 S.Ct. at 3287 n. 16). This has led various courts, though not this Court, to create restrictions on a civil RICO claim,

such as requiring a defendant to have been convicted of the predicate acts or requiring a plaintiff to have suffered a "racketeering injury." The Supreme Court has rejected these attempts to limit the scope of the civil RICO provisions as contrary to the language and history of the statute. *Sedima,* 105 S.Ct. at 3279, 3284, 3287. This Circuit has consistently held that RICO must be given the broad effect mandated by its plain language, see, *e.g., United States v. Yonan,* 800 F.2d 164 (7th Cir.1986), *Illinois Department of Revenue v. Phillips,* 771 F.2d 312, 316 (7th Cir.1985), and the Supreme Court has affirmed our reasoning, *American National Bank & Trust Co. of Chicago v. Haroco,* —— U.S. ——, 105 S.Ct. 3291, 3292, 87 L.Ed.2d 437. The sweep of RICO is admittedly broad, and our function is to apply the language of the statute as drafted by Congress, not to rewrite the statute as we might prefer it to be. *Sedima,* 105 S.Ct. at 3287.

In rejecting the attempts made by other courts to limit the scope of RICO, the Supreme Court suggested that the courts have overlooked the pattern requirement as a way to limit the scope of RICO while remaining consistent with the language of the statute. A pattern of racketeering activity requires "*at least* two acts of racketeering activity." Section 1961(5) (emphasis added). The Supreme Court noted that this implies that "while two acts are necessary [for the pattern requirement to be met], they may not be sufficient." *Sedima,* 105 S.Ct. at 3285 n. 14. The Supreme Court went on to note that the Senate Report on RICO seemed to require continuity plus relationship between the predicate acts for the pattern requirement to be satisfied. *Id.* The Supreme Court also noted that another part of the same bill, 18 U.S.C. § 3575(c), defined a pattern as embracing "criminal acts that have the same or similar purposes, results, participants, victims, or other methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.*

The application of the pattern requirement, and in particular the meaning of the continuity aspect of the pattern requirement, in the aftermath of the above-summarized footnote 14 of *Sedima* has created a conflict among our sister circuits. The Eleventh Circuit has rejected the proposition that the predicate acts must occur in different criminal episodes or schemes in order to be sufficiently continuous to satisfy the pattern requirement. *Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986). By contrast, the Eighth Circuit has held that where the predicate acts were all committed in furtherance of a single scheme, there is insufficient continuity among the predicate acts and the pattern requirement is not met. *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). The Fifth Circuit seemed initially to side with the Eleventh Circuit, holding that two acts of mail fraud committed in the course of a single fraudulent scheme did not run afoul of footnote 14 of *Sedima. R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985). In a subsequent opinion, however, that Circuit seemed to suggest that the nature of the pattern requirement remained an open question, without referring to its 1985 opinion on the subject. *Smoky Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 785 F.2d 1274, 1280 n. 7 (5th Cir.1986). The Third and D.C. Circuits have acknowledged the Supreme Court's comments on the pattern requirement but have not yet had the direct opportunity to apply them. *Berg v. First American Bankshares, Inc.,* 796 F.2d 489, 501 (D.C. Cir.1986); *United States v. Grayson,* 795 F.2d 278, 288–90 (3d Cir.1986).

This same aspect of the pattern requirement has divided district courts in our own Circuit. Judge Shadur made the initial foray into this thicket less than a month after the *Sedima* opinion. In a characteristically thorough and scholarly opinion, he held that there is no pattern shown when the predicate acts were all implemented in furtherance of the same criminal scheme. *Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828, 833 (N.D.Ill.1985). He followed this proposition in dismissing

plaintiffs' complaint in the instant case. Some district judges in our Circuit have followed Judge Shadur's construction of the pattern requirement. See, *e.g., Fleet Management Systems v. Archer-Daniels-Midland Co.,* 627 F.Supp. 550 (C.D.Ill. 1986). Other judges have maintained that *Sedima* does not warrant a more restrictive view of the pattern requirement. See, *e.g., Brainerd & Bridges v. Weingeroff Enterprise* No. 85–C–0493 (N.D.Ill.1986); *Haroco v. American National Bank & Trust Co. of Chicago,* 647 U.S. 1026 (N.D.Ill.1986). Still others have steered a middle course: they have acknowledged that in the aftermath of *Sedima* two predicate acts are not always sufficient to satisfy the pattern requirement, but have rejected the proposition that at least two separate schemes are required. See, *e.g., Heritage Insurance Co. of America v. First National Bank of Cicero,* 629 F.Supp. 1412 (N.D.Ill.1986); *Trak Microcomputer Corp. v. Wearne Bros.,* 628 F.Supp. 1089 (N.D.Ill.1985). See generally *Papai v. Cremosnik,* 635 F.Supp. 1402, 1408–10 (N.D.Ill.1986). Courts in other circuits have acknowledged these varying approaches. See, *e.g., McLendon v. The Continental Group,* Civ.A. No. 83–1340 (D.N.J. July 31, 1986); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532 (D.Mass.1986).

Requiring both continuity and relationship among the predicate acts for the pattern requirement to be met is a sound theoretical concept that is not easily accomplished in practice. This is because the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. To focus excessively on either continuity or relationship alone effectively negates the remaining prong. See *Heritage Insurance,* 629 F.Supp. at 1416.

We acknowledge that subsequent to the Supreme Court's opinion in *Sedima,* the mere commission of two or more predicate acts within ten years of one another does not automatically constitute a pattern of racketeering activity. To the degree that, prior to *Sedima,* we said that two predicate acts invariably constitute a pattern of racketeering activity, *e.g., United States v. Weatherspoon,* 581 F.2d 595, 602 (7th Cir. 1978), such statements are no longer valid. The acts must demonstrate both a continuity and a relationship in order to constitute a pattern of racketeering activity. However, the proposition that the predicate acts must always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement focuses excessively on continuity, and therefore cannot be accepted as a general rule. Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result.

▉ Instead, we agree with those courts that have steered a middle course between these two extremes. In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.,* "transactions 'somewhat separated in time and place.'" *Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill. 1985) (quoting *United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn.1975)); see *McLendon v. The Continental Group,* Civ.A. No. 83–1340 (D.N.J. July 31, 1986) [Available on WESTLAW, DCTU database] (adopting middle approach); *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.,* 639 F.Supp. 1532 (D.Mass.1986) (adopting same approach). Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not

mean that the acts automatically fail to satisfy the pattern requirement. The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative.

■ In the instant case, plaintiffs have alleged that defendants committed several acts of mail fraud over a period of several years in furtherance of an overall scheme to defraud plaintiffs. These acts of mail fraud were distinct; some related to two separate foreclosure sales that occurred two years apart, while others related to allegedly fraudulent statements made in connection with the initial loan transaction. While these acts can be viewed as part of a single grand scheme, they were ongoing over a period of nearly four years in addition to being distinct acts. Under the facts of this case, plaintiffs have satisfied both the continuity and relationship aspects of the pattern requirement.

Despite the outcome in the instant case, the continuity aspect of the pattern requirement can have practical importance. One can easily hypothesize cases in which two predicate acts are so closely related that they lack the requisite continuity and do not satisfy the pattern requirement. A paradigmatic case would be where a defendant defrauds a plaintiff by falsifying a loan application, and the entire fraudulent scheme consists only of this single unified transaction. Even though plaintiff may be able to allege two predicate acts (for example, two mailings that were made at the same time in connection with this single loan transaction), this hypothetical case is really a single transaction occurring at a single point in time, and would fail to meet the pattern requirement. As Judge Aspen has aptly noted in discussing a similar example, "[t]o call this singular criminal event 'continuous' or 'multiple' criminal activity is to stretch these concepts beyond recognition." *Ghouth v. Conticommodity Services,* 642 F.Supp. 1325, 1337 (N.D.Ill. 1986).

Our construction of the pattern requirement is consistent with the results reached in other Seventh Circuit cases that have been decided subsequent to the Supreme Court's decision in *Sedima.* In *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985), we concluded that the plaintiff sufficiently alleged a pattern of racketeering activity. In *Phillips,* the defendant mailed nine separate fraudulent state sales tax returns to the state over a nine-month period. These mailings were clearly distinct transactions ongoing over a period of time: each tax return was a separate lie and resulted in a separate underpayment, independent of the other lies and underpayments. See *Ghouth,* at 1338.

In *Lipin Enterprises v. Lee,* 803 F.2d 322, 324, (7th Cir.1986), we held that the plaintiff failed to allege sufficiently a pattern of racketeering activity. In *Lipin,* the plaintiff alleged that the defendants defrauded him as part of a single acquisition of over $960,000 worth of stock. It is true that plaintiff was able to point to multiple predicate acts: a false statement made during negotiations for the sale, false financial statements, a false opinion letter from the attorneys, false financial statements, and a false statement that the financial statements were accurate. The existence of multiple predicate acts in *Lipin,* however, is only because the acquisition of stock in this context is a complicated transaction that requires many separate statements from a variety of persons: financial statements from the accountants, opinions from the lawyers, oral statements from the parties negotiating the sale, and so forth. All of these predicate acts still relate to but a single act: an acquisition of a large block of stock. The mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions that are distinct in time and place. Since these predicate acts were all made in a fairly short period of time (several months), and all clearly relate to the

same transaction (the acquisition of a large block of stock), involve a single scheme and a single victim, and create a single injury, the acts in *Lipin* do not satisfy the continuity aspect of the pattern of racketeering activity.

We recognize that by adopting this factually-oriented standard, as opposed to a hard and fast set rule, the legal test is necessarily less than precise. One judge has even analogized this legal test to Justice Stewart's famous test for obscenity—"I know it when I see it"—set forth in his concurrence in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793; *Papai v. Cremosnik*, 635 F.Supp. 1402, 1410 (N.D. Ill.1986). But we reject the claim that such a test necessarily leads to inconsistent results. A test that depends on a case-by-case analysis will necessarily be a bit rough around the edges at first, but as courts begin to apply it to a greater number of factual patterns, its contours should become clearer. The Supreme Court has invited the lower courts to fashion a pattern requirement that encompasses both continuity and relationship. We feel that a legal test involving a factually-oriented standard, not a set rule, best meets the Supreme Court's directive.

This legal test adopted today still gives civil RICO a broad scope, and may still permit so-called "garden variety" fraud claims to be brought in federal court. But as both this Circuit and the Supreme Court have noted, hostility to the extraordinary breadth of civil RICO is not a reason for courts to restrict its scope. See *supra* pp. 973–974. Any construction of the statute must comport with its plain and unambiguously broad language, and we feel that our definition of the pattern requirement best reconciles the breadth of civil RICO and the Supreme Court's directive in *Sedima*.

It should be noted that Congress has recently considered narrowing the breadth of civil RICO. Thus Congressman Frederick C. Boucher introduced H.R. 5445 to rectify some of the statute's overbreadth.[2] That bill was approved by the House of Representatives on October 7, 1986, but the Senate tabled a motion to consider it as an amendment to the continuing resolution and did not pass the bill, which was referred to the Committee on the Judiciary, before Congress' adjournment on October 18, 1986. Of course, if Congress should decide to narrow civil RICO, the courts will respect its restrictions.

IV

Although the district court relied largely on the pattern requirement in dismissing plaintiffs' last complaint, one other aspect of this case warrants attention. Defendants claim that the enterprise requirement is not met here because plaintiffs allege that the Bank is both an enterprise and a RICO defendant. That factor, however, does not warrant the dismissal of plaintiffs' complaint.

■ We have previously held that in a civil RICO claim under Section 1962(c), the same entity cannot be both a RICO defendant and an enterprise. *Haroco*, 747 F.2d at 399–402. We have also held that the same entity can be both a RICO defendant and an enterprise under Section 1962(a). *Masi*, 779 F.2d at 401–02. In the instant case, the first civil RICO claim (Count II of the complaint) purports to be made under both Sections 1962(a) and 1962(c), against defendants Dubin, Goldsmith, and Lovinger, with the enterprises being the Bank, Utica Pharmacy, Grand Drugs, Glen Flora Drugs, and SDM for purposes of the Section 1962(c) claim. Since there is no overlap between the defendants and the enterprises, there is no problem.

The second civil RICO claim (Count IV of the complaint) purports to be made under both Sections 1962(a) and 1962(c), against defendants Godbolt, Dubin, and Goldsmith, with the enterprises being the Bank and Eric Enterprises. However, in the prayer for relief in Count IV, two ambiguities are

**2.** The terms of H.R. 5445 were ably explained by its sponsor, Rep. Boucher, in a luncheon address to the Federal Judges Association meeting in Washington, D.C., on October 8, 1986.

created: plaintiffs pray for relief against Crim and the Bank in addition to the defendants named in the caption to Count IV, and the relief is requested pursuant to Section 1962(c) only, contradicting an earlier paragraph in Count IV. To the extent Count IV states a claim under Section 1962(c), the Bank cannot be both a defendant and an enterprise. Plaintiffs must resolve these ambiguities on remand so that it can be determined if there is indeed the problem of the same entity serving as both a RICO defendant and an enterprise in a Section 1962(c) claim in this case.

For the above-stated reasons, we reverse the district court's dismissal of plaintiffs' complaint and remand for further proceedings consistent with this opinion. Circuit Rule 18 will apply.

RIPPLE, Circuit Judge, concurring.

I concur in the court's judgment and in its essential holding. I write separately to emphasize that the court's opinion must be read cautiously. While the opinion utilizes the terms "expansiveness" and "broad scope," it hardly adopts the sort of unbounded analysis frequently urged upon us by the RICO litigation industry. Rather, the court carefully adopts an approach consistent with the legislative intent that RICO provide a special tool against the sort of illegal activity which continues to manifest itself over time and thus poses a special threat to society. Despite its expansive dicta, the court is thus loyal to its task—its sole legitimate task—of identifying and effectuating the congressional intent.[1] Just as judicial hostility to civil RICO should not produce overly restrictive interpretations, judicial enthusiasm for the displacement of state law ought not lead to overly broad readings.

It is particularly heartening that the court has avoided embracing any of the catch-words so prevalent in the literature and judicial opinions to describe its holding.

Rather, in its essential holding if not in its dicta, the court remains loyal to the concept that, in interpreting ambiguous statutory language, it ought to proceed cautiously and avoid relying on the fact situation of one case to determine definitively the contours of the statutory scheme. Such was the approach of the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. ——, ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); such must be the course of the Seventh Circuit.

---

1. I do not read the court's mention of a particular legislative proposal for the amendment of RICO, maj. op. at 977, as endorsing the particular provisions of that bill. *See generally Tide-*water Oil Co. v. United States, 409 U.S. 151, 174, 93 S.Ct. 408, 421, 34 L.Ed.2d 375 (1972) (concurring statement of White, J.).