Marshall GERSON, Plaintiff,

v.

Mitchell RAPOPORT, Bette Rapoport, Wapner, Koplovitz & Futeras, Jerry Wapner, Budmar Management Co. and Marie Coppage, Defendants.

No. 86–CV–641.

United States District Court, N.D. New York.

Jan. 14, 1987.

McNamee, Lochner, Titus & Williams, John M. Burns, III, Albany, N.Y., for plaintiff.

Stanley Bryer, Mitchell and Bette Rapoport, New York City, Herzog, Nichols, Engstrom & Koplovitz, P.C., Patrick J. MacKrell, Jerry Wapner and Wapner, Koplovitz & Futeras, P.C., Albany, N.Y., for defendants.

### MEMORANDUM–DECISION AND ORDER

McAVOY, District Judge.

This action arises out of a transaction involving the sale of all of the outstanding capital stock of Warme's Corporation. Warme's operated as a combination luncheonette, tobacco shop and newsstand. It was solely owned by defendant Bette Rapoport and managed by defendant Mitchell Rapoport. The plaintiff Marshall Gerson (Gerson) retained the defendant firm of Wapner, Koplovitz & Futeras (WKF) and

defendant Jerry Wapner (Wapner) as his attorneys to represent him in the acquisition of Warme's capital stock. On February 28, 1986, the parties closed the deal and executed a purchase agreement drafted by WKF and Wapner (the Wapner defendants).

The Second Amended Complaint alleges that the defendants conspired to and did perpetrate a fraud upon the plaintiff in consummating the foregoing transaction by overstating Warme's gross and net revenues, by understating the wages due Warme's employees and by concealing Warme's tax liabilities arising from previous, fraudulent tax filings. Gerson has brought the instant action pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, and sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO).

### I.

The plaintiff seeks damages in excess of $299,000 resulting from the Wapner defendants' allegedly fraudulent actions. The following constitute the pertinent factual allegations contained in the Second Amended Complaint.[1] For three years prior to the date of the sale, Bette and Mitchell Rapoport, together with defendants Budmar Management Co. and Marie Coppage, Warme's tax preparers, knowingly and deliberately filed fraudulent sales tax returns, income tax returns and withholding tax forms with the New York State Department of Taxation and Finance and with the United States Internal Revenue Service. These returns allegedly understated Warme's gross revenues and wages paid. Consequently, Warme's had accrued a substantial tax liability for unpaid and unreported taxes together with interest and penalty charges, allegedly in excess of $50,000. Bette and Mitchell Rapoport concocted a scheme to avoid this tax liability by publicly offering Warme's for sale.

---

**1.** The defendants initially directed this motion to the First Amended Complaint. Oral argument was heard on September 8, 1986. Since that time, the plaintiff has filed a Second Amended Complaint. The following discussion is directed thereto.

This occurred in late 1985 and was effected by placing advertisements in *The New York Times* and through telephone communications. Second Amended Complaint pp. 9–13.

In January 1986, Wapner and WKF agreed to act as Gerson's attorneys in the acquisition of Warme's. In the course of negotiations, these defendants allegedly concealed Warme's tax status and misrepresented its revenues. *Id.* at pp. 23–25. Gerson alleges that the Wapner defendants made deliberate misstatements and omissions concerning Warme's financial and tax status and intended that plaintiff rely upon them in his acquisition of Warme's capital stock. *Id.* at pp. 30–43. In addition, Gerson claims that the Wapner defendants attempted to lull him into not asserting his rights after the completion of the sale. *Id.* at pp. 44–53.

The RICO allegations are set forth in paragraphs 33–45 of the Second Amended Complaint wherein Warme's is named as the RICO enterprise and the defendants are listed as the persons through whom the pattern of racketeering activity was implemented. In addition to the specific allegations enumerated hereinbefore, the offenses of mail fraud, wire fraud and securities fraud are generally listed as the predicate offenses of the RICO claim. Wapner and WKF have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the RICO claims against them.

## II.

RICO creates a private right of action and provides for recovery of treble damages, attorney's fees and costs for "any person injured in ... business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Before a plaintiff may recover under section 1964, he must allege that the defendant has violated section 1962. In order to plead a RICO claim, the complaint must allege:

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). The Second Amended Complaint must, therefore, allege that the Wapner defendants participated in a pattern of racketeering activity in connection with the conduct of Warme's affairs. The defendants argue that, in the context of this case, the alleged acts of mail fraud, wire fraud, and securities fraud which were executed in furtherance of a single transaction, i.e., the acquisition of Warme's stock, are insufficient to satisfy the pattern requirement.

Just what constitutes a "pattern of racketeering activity" has been vigorously debated since the Supreme Court's decision in *Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). While a pattern of racketeering activity requires proof of at least two of the predicate acts of racketeering listed in 18 U.S.C. § 1961(1), including wire fraud and mail fraud, it is clear that their existence is only a threshold to the invocation of RICO. In *Sedima,* the Court addressed what it perceived to be the "extraordinary" uses to which civil RICO has been applied and cited the breadth of the predicate offenses and Congress' failure to articulate a meaningful definition of "pattern" as the source of these abuses. In searching for a reasonable interpretation of the statute, the Court explained, *albeit* in dicta, that

while two acts are necessary [to create a pattern], they may not be sufficient. Indeed, in common parlance two of anything usually do not form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not form a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing ac-

tivity to be effective. It is this factor of **continuity plus relationship** which combines to produce a pattern."

*Sedima*, 105 S.Ct. at 3285 n. 14 (citations omitted).

■ In this Circuit, the twin elements of relatedness and continuity are satisfied "by the fact that the 'predicate acts constituting a pattern of racketeering activity must all be done in the conduct of the affairs of an enterprise.'" *United States v. Ianniello*, 808 F.2d 184, at 190 (2d Cir.1986) (quoting *United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980)). *Ianniello* involved a scheme whereby the defendants skimmed profits from restaurants and bars they owned and operated in New York City. In perpetrating the scheme, they obtained liquor licenses from the New York State Liquor Authority without disclosing their financial interests in the bars and restaurants. This facilitated the granting of the licenses and frustrated the detection of their profit skimming. The court held that the acts of mail fraud committed by executing deceptive license renewal applications in successive years to the State Liquor Authority for the same establishment satisfied the pattern requirement. In so holding, the court expressly rejected approaches utilized in other circuits which require allegations of multiple "episodes" or multiple "schemes" of criminal activity in order to state a section 1962(c) pattern, *id.* at 192 n. 15, and refused to reconsider its position that two acts can create a RICO pattern. *Id.* at 192. Instead, the court held that "when a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied."

In *Ianniello*, the Second Circuit expressly reaffirmed the holding in the *Weisman*

case, which involved a similar, ongoing enterprise. In *Weisman*, the defendants, through the fraudulent public offering of common stock, raised funds to construct a theater. They then skimmed profits gained from the operation of the theater which caused it to file a petition under Chapter 11 of the Bankruptcy Act. While the theater continued its operations as debtor in possession, the defendants continued to unlawfully divert funds to themselves. The court held that the affairs of the enterprise were indeed conducted through a pattern of racketeering.

In light of the foregoing, it is clear that under RICO a plaintiff need only claim that at least two acts were committed in the conduct of the affairs of a continuing enterprise and that the acts were related to a common purpose. Separate acts rather than episodes or schemes are all that the statute requires. Thus, a single fraudulent scheme may be carved into its component pieces in order to satisfy the two predicate act requirement. The Second Amended Complaint does allege that the Wapner defendants committed several acts in furtherance of the scheme to sell Warme's. As noted hereinbefore, it enumerates several instances where the defendants misrepresented and omitted important facts concerning Warme's financial status in order to induce Gerson to purchase Bette Rapoport's stock. With respect to the allegations concerning the *number* of predicate acts committed, the court finds that Second Amended Complaint is sufficient.

■ Nevertheless, adequate pleading of two predicate acts does not automatically establish a "pattern of racketeering." Both *Ianniello* and *Weisman* involved enterprises which had no obvious termination goal or date. The Wapner defendants contend that the plaintiff has merely alleged that they defrauded him in the course of a single acquisition of stock and that the court cannot, therefore, reasonably construe their activity as continuous.[2] Under

---

2. The Seventh Circuit's decision in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), which was cited with approval in *Ianniello*, ap-

pears, at first glance, to lend support to the defendants' argument. Although the *Morgan* court likewise stressed the requirement that the

*Ianniello,* a defendant engages in a "pattern of racketeering activity" when he commits at least two acts that have the common purpose of furthering an ongoing criminal enterprise. Warme's, a business which allegedly has engaged in a tax evasion scheme for several years, constitutes the enterprise in this action. The ultimate question for this court is, therefore, whether the pleadings adequately allege that the Wapner defendants made their misrepresentations with the purpose of furthering a continuing criminal enterprise. Keeping in mind that the plaintiff's allegations must be viewed as true in a motion to dismiss under Rule 12(b)(6) and that a complaint can be dismissed only when it is clear "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), the court finds the allegations contained in the Second Amended Complaint sufficient for the following reasons.

The plaintiff has alleged that "[i]n the course of negotiating the sale of all of Warme's capital stock to plaintiff, Bette, Mitchell, WKF, Wapner, Budmar and Coppage failed to disclose to plaintiff and concealed from him Warme's substantial Tax Liability." *Id.* at paragraph 23. Although the Second Amended Complaint does not allege that the Wapner defendants actually participated in the fraudulent tax filings, the plaintiff does claim that the Wapner defendants deliberately failed to expose Warme's actions to the plaintiff. Thus, the complaint can be construed as claiming that the Wapner defendants participated in Warme's ongoing scheme to evade taxes by facilitating the sale of Warme's stock. According to the plaintiff, the sale constituted the Rapoport's final effort to cover-up their fraud. Although the Wapner defendants contend that the Second Amended Complaint charges them with little more than a "garden-variety" fraud, this court must reject the defendants' characterization of the facts. A literal application of the *Ianniello* test requires this court to find that the alleged activity falls within RICO's parameters. Although the underlying tax avoidance scheme alleged in the case at bar is not as far-reaching as that presented in *Ianniello,* and in some respects is strikingly dissimilar, it is clear that it can be described as ongoing in nature and that the separate misstatements and omissions made by the Wapner defendants, although committed solely in connection with the one-time sale of Warme's stock, can be construed as committed with the purpose of furthering Warme's overall scheme.

Accordingly, the Wapner defendants' motion to dismiss is hereby

enterprise be "ongoing" in nature, it focused on the nature of the acts committed in furtherance of the enterprise. The following factors were listed as relevant to determining whether a pattern exists; namely, the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. Although facially rejecting the "scheme", "episode" or act analysis employed by so many courts in resolving the pattern question, *Morgan* actually appears to embrace the reasoning underlying the "episode" test. The court stated:

> [W]e agree with those courts that have steered a middle course between … extremes. In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., "transactions somewhat separated in time and place."

*Id.* at 975 (citations omitted).

The Wapner defendants address these concerns and ask the court to consider the fact that the alleged multiple predicate acts committed by them, including false statements concerning Warme's financial status, were committed over a very short period of time and were perpetrated in furtherance of a single objective, i.e., the sale of Warme's stock. Furthermore, the Wapner defendants' alleged fraud was confined to various representations made to one victim only, the plaintiff herein. Indeed, the *Morgan* court expressly distinguished those cases in which multiple acts were committed in furthering a single, unified criminal transaction such as the falsification of a single loan application or the fraudulent acquisition of a single block of stock.

This court must, however, reject the Wapner defendants' analysis. Under *Ianiello,* the RICO enterprise itself provides the focal point for the pattern analysis. It is this test which this court must apply.

DENIED.

IT IS SO ORDERED.