**Michael J. FLANNERY, Plaintiff,**

v.

**IFA INCORPORATED, British Linen Bank, the Bank of Scotland, Paul Sheedy, Howard McHattie, A.D. Nicol, and Ian Brown, Defendants.**

No. 89 C 3197.

United States District Court,
N.D. Illinois, E.D.

Oct. 4, 1989.

Gregory A. Adamski, Chicago, Ill., for plaintiff.

Thomas P. Ward, David S. Mann and Robert J. Block, McBride, Baker & Coles, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff in this case has filed a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, as well as five state law claims. Defendants have moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6).[1] Defendants have also moved to recover attorneys' fees and costs pursuant to Fed.R.Civ.P. 11. For the reasons stated herein, defendants' motion to dismiss is granted. Accordingly, this case is referred to a magistrate to conduct a hearing on defendants' motion for sanctions.

## I. FACTS

For the purpose of ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), this court must accept plaintiff's allegations as true. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir.1986).

Prior to 1987, plaintiff Michael J. Flannery was vice president of Bell–Atlantic Company, with control over its marketing division. Suffering from stagnation in revenues and sales of its computer equipment, defendant IFA Incorporated ("IFA") sought experienced managerial assistance to redirect its marketing strategy. In March 1987, IFA approached Flannery with an offer of employment. IFA offered Flannery the position of Marketing Vice President and General Manager. Flannery was to be compensated on a commission basis, with all of his business expenses paid by IFA. IFA also promised to give Flannery 2% of its stock as part of the compensation package. IFA assured Flannery that his job would be secure as long as he performed competently, and that he would only be terminated for good cause. Relying on these terms of employment, Flannery accepted the offer.

During his first two years at IFA, Flannery observed several instances in which the President, defendant Paul Sheedy, allegedly mismanaged and manipulated the corporation for his own personal gain. Flannery reported this activity to defendant British Linen Bank,[2] which has a 75% ownership interest in IFA. Subsequently, Sheedy fired Flannery.

Flannery asserts that he was discharged without cause and that defendants owe him approximately $700,000 in commissions and a 2% stock interest in IFA. Defendants' conduct, Flannery contends, amounts to a violation of RICO. In addition to his RICO claim, Flannery has asserted pendent state law claims for breach of contract, interference with business relations, and common law fraud.

## II. DISCUSSION

### A. *Motion to Dismiss*

Section 1964 of RICO entitles a private plaintiff to assert a civil claim under section 1962. 18 U.S.C. § 1964 (1982). In order to state a claim under section 1962, the plaintiff must demonstrate that the de-

---

**1.** On two separate occasions, plaintiff simply ignored a court order to file a response to defendants' motion to dismiss. Although this court provided him with ample time to file a brief, plaintiff demonstrated his indifference to this court's briefing schedules by failing to respond promptly or to request an extension. On August 30, 1989, this court granted defendants' motion to strike plaintiff's response brief. Undaunted in his efforts to test the limits of this court's patience, plaintiff set a motion for September 27 to vacate the August 30 order, and once again he inexplicably failed to appear. Consequently, this court is under no obligation to review plaintiff's response memorandum; were it not more expedient to evaluate the arguments raised in plaintiff's brief, this court would refrain from doing so. Despite plaintiff's careless attitude toward this court, opposing counsel, and his own client, his memorandum was fully considered by the court in order to reach a fair and expeditious resolution of this matter.

**2.** British Linen Bank is wholly owned by defendant The Bank of Scotland. The other named defendants, Ian Brown, Howard McHattie, and A.D. Nicol, are members of IFA's board of directors.

fendant engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962 (1982). To establish a pattern, the Supreme Court requires that there be "continuity plus relationship" among the predicate acts of racketeering. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Admittedly, this "continuity plus relationship" test is not entirely without ambiguity. The Seventh Circuit, however, has set forth several factors which are relevant in determining whether a pattern exists: "[T]he number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan*, 804 F.2d at 975.

█ Considering the factors developed in *Morgan*, this court sees no evidence in this case which establishes a pattern. Flannery argues that defendants' alleged racketeering scheme involved luring him away from Bell–Atlantic Company "by making false promises to him about stock acquisition, commissions, and job tenure." The purpose of this "scheme" was to induce Flannery into working for IFA so that they could exploit his managerial skills to enhance IFA's profitability. According to Flannery, defendants never intended to compensate or employ him in accord with the terms of their agreement. In furtherance of this scheme, Flannery claims that defendants "memorialize[d] their false promises" to him by sending letters through the United States mails—the letters being characterized as predicate acts

of mail fraud. Defendants' use of telephone and telefax wires to "convey and confirm their false promises" to Flannery were alleged to be predicate acts of wire fraud.[3]

Assuming that Flannery's allegations are true, these multiple acts were all in furtherance of one transaction and a single finite scheme: the hiring of Flannery. Even if the mailings and telephone calls can be construed as multiple predicate acts to defraud Flannery, they all related to the same transaction, resulting in a single injury to a single victim. This isolated event does not threaten the type of continuing illegal activity or long-term criminal conduct that is indicative of a pattern. In several cases, the Seventh Circuit has reached the same result. *See, e.g., SK Hand Tool Corp. v. Dresser Indus.*, 852 F.2d 936, 943 (7th Cir.1988) (acts of mail and wire fraud which induced the plaintiff to purchase the division of a company at an inflated price did not create a pattern because the acts related to a single transaction involving one victim); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987) (fraudulent representations leading up to the formation of a single contract and the transfer of a single business opportunity did not constitute a pattern); *see also Medical Emergency Serv. Assocs. v. Foulke*, 844 F.2d 391, 392 (7th Cir.1988); *Elliott v. Chicago Motor Club Ins.*, 809 F.2d 347, 350 (7th Cir.1986).[4]

Flannery's accusations of broken promises and breaches of contract do not reflect

**3.** "Racketeering activity" emcompasses acts of mail and wire fraud indictable under Title 18, sections 1341 and 1342. 18 U.S.C. § 1961(1)(B) (1982). Nevertheless, as Judge Cudahy aptly stated:

> Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts (here, the mailings) may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity.

*Lipen Enters. Inc. v. Lee*, 803 F.2d 322, 325 (7th Cir.1986) (Cudahy, J., concurring).

**4.** Contrary to Flannery's position, the Supreme Court's recent decision in *H.J. Inc. v. Northwest-*

*ern Bell Tel. Co.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), did not "totally reject" the Seventh Circuit's interpretation of a RICO pattern. The Seventh Circuit has explicitly rejected the notion that predicate acts relating to a single scheme or involving a single victim can never amount to a pattern. *See Morgan*, 804 F.2d at 975–76. Likewise, in *Northwestern Bell*, the Supreme Court stated that a single scheme may be sufficient to establish a pattern if "the predicates themselves amount to, or ... otherwise constitute a threat of, *continuing* racketeering activity." *Northwestern Bell*, 109 S.Ct. at 2901 (emphasis in original). It is this threat of continuity that Flannery has failed to establish in this case.

discrete criminal episodes. Consequently, the overly general and conclusory assertions of racketeering activity contained in Flannery's complaint are insufficient to withstand defendants' motion to dismiss. Having ruled that Flannery has failed to state a claim under RICO, the remaining state law claims are dismissed for lack of jurisdiction.

### B. *Motion for Sanctions*

■ Defendants also have moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants complain that Flannery filed a "frivolous" claim for the sole purpose of gaining access to federal court. Pointing to Flannery's persistent failure to respond to opposing counsel's correspondence, to appear for motions, or to attend noticed hearings, defendants seek to recover attorneys' fees and costs. Due to Flannery's conspicuous absence and unwillingness to appear before this court and opposing counsel, the court refers this case to a magistrate. In determining whether sanctions are appropriate, the magistrate shall conduct a hearing to offer Flannery an opportunity to respond to these charges.

### III. CONCLUSION

For the foregoing reasons, this court grants defendants' motion to dismiss plaintiff's complaint in its entirety. In addition, the case is referred to a magistrate for a hearing on defendants' motion for sanctions.

IT IS SO ORDERED.