980 F.2d 1122
 RICO Bus.Disp.Guide 8159
 420 EAST OHIO LIMITED PARTNERSHIP, an Illinois limited
partnership, Plaintiff-Appellant,
v.
Paul COCOSE, William Cocose, Michael Sagett, and Mayfair
Corporation, an Illinois corporation, Defendants-Appellees.
 No. 91-3402.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 18, 1992.
Decided Dec. 3, 1992.
 
 Steven J. Rosenberg, Chicago, Ill. (argued), for 420 East Ohio Ltd. Partnership.
 Charles J. Risch (argued), Randall B. Gold, Lawrence A. Rosen, Howard P. Kamin, Lawrence, Kamin, Saunders & Uhlenhop, Chicago, Ill., for Paul and William Cocose and Mayfair Corp.
 David A. Novoselsky, Novoselsky & Associates, Chicago, Ill. (argued), for Michael Sagett.
 Before CUDAHY and MANION, Circuit Judges, and GIBSON, Senior Circuit Judge.[1]
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 420 East Ohio Limited Partnership (hereinafter "the partnership") appeals the dismissal of its three claims based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (1988). We affirm.
 
 I. BACKGROUND
 
 2
 In May of 1988, the partnership and the Mayfair Corporation entered into a contract whereby the partnership was to develop, and Mayfair was to act as general contractor for the construction of, an apartment building. The contract specified that, on a monthly basis, Mayfair was to submit an application for payment to the partnership and the partnership's architect. The application was to include copies of checks issued to subcontractors, which were supposed to prove that Mayfair had used proceeds from the prior payment to pay the subcontractors. The partnership would then fill out a statement and send it, along with Mayfair's application, to various entities, including the Chicago Title & Trust Company. Mayfair also sent Chicago Title the subcontractors' waivers and affidavits attesting that the subcontractors had been paid. Chicago Title reviewed the documents and, if all was in order, advised the partnership and the lender for the project (the Northern Trust Company) that the lender should advance funds to the partnership's account, at which time the partnership wrote a check to Mayfair.
 
 
 3
 In August 1990, the partnership began receiving phone calls from various subcontractors complaining that they had not been paid. A representative from the partnership, Howard Walker, met with two of Mayfair's officers, Paul and William Cocose, to discuss the problem. The Cocoses told Walker that approximately $250,000 in drawn funds had been "diverted" to Mayfair instead of being used to pay subcontractors. A subsequent examination of Mayfair's books revealed that over $359,000 from draws thirteen through eighteen and the entire payment (over $535,000) from draw nineteen had been disbursed to Mayfair instead of to the subcontractors. These "diversions" occurred between February and August of 1990. In order to effectuate these transfers, Mayfair's controller (Michael Sagett) falsified the necessary paperwork.
 
 
 4
 In June 1991, the partnership filed a five count complaint against Mayfair, the Cocoses, and Sagett. Counts one, two and three alleged RICO violations predicated on Mayfair's commission of both bank and mail fraud. See 18 U.S.C.A. § 1961(1) (West Supp.1992) (identifying both mail fraud and financial institution fraud as "racketeering activity"). Counts four and five alleged common law fraud and breach of contract, respectively. The defendants (collectively referred to as "Mayfair") filed a motion to dismiss the RICO counts, alleging the complaint failed to sufficiently allege they had engaged in a pattern of racketeering activity. The district court granted the motion to dismiss the RICO counts, then dismissed the pendant claims without prejudice. The partnership appeals.
 
 II. DISCUSSION
 
 5
 Congress enacted RICO to help combat organized, long-term criminal activity, and granted victims of such activity a private right of action. 18 U.S.C. § 1964(c) (1988). The elements of a RICO violation, in shorthand form, are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within ten years of each other. 18 U.S.C. § 1961(5) (1988). In Sedima, the Supreme Court emphasized that two acts constituted a minimum requirement; courts were instructed to ascertain whether the racketeering acts demonstrated a combination of continuity plus relationship. Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. In Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986), we concluded the requisite continuity was present if the predicate acts were "ongoing over an identified period of time so that they c[ould] fairly be viewed as constituting separate transactions" and suggested the following factors be considered: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." Id. at 975. We emphasized, however, that these factors were not to be applied like rules, but rather constituted standards by which the particular facts of each case were to be judged. Id. at 976. Furthermore, "[n]one of these factors is controlling standing alone, yet together, they provide the lens through which the courts may focus on the existence of 'continuity plus relationship.' " Jones v. Lampe, 845 F.2d 755, 757 (7th Cir.1988).
 
 
 6
 In H.J., Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court attempted to further refine the proper focus for the pattern requirement and, more specifically, the continuity component of that requirement. The Court declared that continuity existed when there are "a series of related predicates extending over a substantial period of time," with a substantial period of time being a time period greater than a few weeks or months. Id. at 242, 109 S.Ct. at 2902. Alternatively, continuity can be proven if there is a threat of continued criminal activity, which is present if the racketeering activity constitutes an entity's regular way of doing business, or if the racketeering activity, by its nature, is likely to extend into the future. Id.
 
 
 7
 After H.J., Inc., we retained the Morgan test. E.g., Management Computer Servs. v. Hawkins, Ash, Baptie & Co., 883 F.2d 48, 51 (7th Cir.1989); Sutherland v. O'Malley, 882 F.2d 1196, 1203 (7th Cir.1989). However, our use of Morgan has changed slightly in that "we now analyze these various factors with an eye towards achieving a 'natural and common sense' result." United States Textiles, Inc. v. Anheuser-Busch Cos., 911 F.2d 1261, 1267 (7th Cir.1990) (citing H.J., Inc., 492 U.S. at 251, 109 S.Ct. at 2906 (Scalia, J., concurring)). In so doing, we have examined the facts with an eye toward not only the Morgan factors, but also toward the Court's suggestion that continuity encompass a lengthy period of racketeering activity or a threat of continued criminal activity. J.D. Marshall Int'l v. Redstart, Inc., 935 F.2d 815, 820 (7th Cir.1991) ("[T]he specific facts of each case must be examined to determine whether the predicate acts upon which the plaintiff relies establish the threat of continuing racketeering activity."); Olive Can Co. v. Martin, 906 F.2d 1147, 1151 (7th Cir.1990) ("The scheme, therefore, had a natural ending with no threat of continued criminal activity."); Sutherland, 882 F.2d at 1205 ("Most importantly, this case presents no threat of continuing illegal activity ... in the future."). The requisite threat of continued criminal conduct can be proven in two ways: "a RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1023 (7th Cir.1992).
 
 
 8
 The partnership first argues Mayfair's activity constituted closed-ended continuity by emphasizing the large number of predicate acts (mail and bank fraud) involved, the number of subcontractors who were not paid, and the length of time between the first and last fraudulent mailings. Because the partnership's complaint was dismissed on the pleadings, we accept all assertions and reasonable inferences contained in the complaint as true. Caldwell v. City of Elwood, 959 F.2d 670, 671 (7th Cir.1992). Nonetheless, we are not persuaded the assertions and inferences relied on by the partnership sufficiently allege continuous activity. First of all, we are not swayed by the number of times mail fraud was allegedly committed because each mailing constitutes a separate offense; consequently, the number of mailings does not necessarily bear a reliable relationship to the magnitude of Mayfair's racketeering activity. See Ashland Oil Inc. v. Arnett, 875 F.2d 1271, 1278 (7th Cir.1989). For the same reason, we are not persuaded by the fact that multiple instances of bank fraud may have occurred; although the Northern Trust Company was induced to part with its money on several occasions, Mayfair's acts were all part of a single scheme to procure the proceeds of its contract with the partnership. The fact that no more than a single scheme is present does not automatically bar the requisite continuity, but the presence of a single scheme is still relevant to our inquiry. Sutherland, 882 F.2d at 1204. Accepting as true the partnership's allegation that the activity occurred during a six month period, we do not believe six months qualifies as the "substantial period of time" referred to in H.J Inc.--particularly when "acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902. This does not mean a six-month period is automatically "too short"; however, six months is not long enough to allow a court to automatically infer the requisite continuity. Even if we consider the unpaid subcontractors to be victims,[2] we do not believe the partnership has alleged anything more than an "ordinary" scheme to defraud and has failed to allege the higher degree of racketeering activity necessary to prove Mayfair represented a continuing criminal threat.
 
 
 9
 The partnership also argues Mayfair's activities are an example of open-ended continuity, and supports its contention by relying on affidavits from individuals involved in other construction projects for which Mayfair was the general contractor. However, these affidavits were submitted as attachments to the partnership's brief opposing Mayfair's motion to dismiss; the complaint is devoid of any allegations that Mayfair regularly conducted its business by committing mail and bank fraud. The partnership never asked for leave to amend its complaint, and the inclusion of additional allegations in the materials opposing the motion to dismiss did not constitute an amendment. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).[3]
 
 III. CONCLUSION
 
 10
 The allegations in the partnership's complaint do not allow us to infer Mayfair was engaged in, or threatened to engage in, continued criminal activity. Therefore, the complaint does not allege Mayfair engaged in a pattern of racketeering activity, and the district court properly dismissed the complaint.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation
 
 
 [2]
 The subcontractors' status as victims, which we do not address, is denied by Mayfair because they have received all the money they were due
 
 
 [3]
 Because of our ruling on this issue, we do not address the parties' arguments about the substance of the affidavits