AMERICAN AUTOMOTIVE ACCES-
SORIES, INC. and Emalfarb In-
vestment Corp., Plaintiffs,

v.

Alan FISHMAN, Defendant.

No. 95 C 5156.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 5, 1998.

Marvin N. Benn, Dawn Marie Cassie, George W. Hamman, Jeanne Marie Hoffmann, Hamman & Benn, Chicago, IL, for Plaintiffs.

Mark H. Schiff, Steven M. Ruffalo, Arnold M. Flank, Lee J. Janger, Jennifer Ann Dorski, Fuchs & Roselli, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Pending is Defendant Alan Fishman's motion for summary judgment. For the reasons set forth below, this court grants the motion.

### FACTS

Plaintiffs American Automotive Accessories ("American") and Emalfarb Investment Corporation ("Emalfarb") are real estate developers doing business in Illinois. (Def. 12(m) ¶ 1,2; Pls. 12(n) ¶ 1,2.) Defendant Alan Fishman ("Fishman") owns or operates sixteen currency exchanges in Illinois, including the "Loyola 'L' Currency Exchange, Inc." ("Loyola L") located in Chicago. (First Amended Complaint (the "Complaint") and Answer at ¶ 3.) Plaintiffs assert that Fishman conspired with Nicholas Favia ("Favia"), a project manager for some of Plaintiffs' real estate development projects (see Def. 12(m) ¶ 7; Pls. 12(n) ¶ 7), to maintain a check-cashing scheme to cash fraudulent checks through Loyola L.

According to Plaintiffs, Favia was responsible for their check requisitions and making payments to subcontractors and suppliers. (Pl. 12(n) Add. Facts ¶ 2, Ex. A ¶ 6.) Favia prepared check request forms requesting a certain sum for a particular subcontractor and/or supplier. (Pl. 12(n) Add. Facts ¶ 2, Ex. A ¶ 8.) This form would then be mailed

from Favia's Illinois office to the office of Plaintiffs' president, Mark Emalfarb, in Florida. (*Id.*) The Florida office would normally prepare the checks which Mark Emalfarb would sign, and the request forms and the checks would be mailed back to Favia in Illinois. (*Id.*) On some occasions, Favia or the Illinois office would prepare the checks and mail them to Mark Emalfarb in Florida for his signature. (*Id.*) According to Plaintiffs, Favia began sending Mark Emalfarb check request forms requesting checks for alleged payments to what Plaintiffs much later discovered were fictitious and/or phony payees. (Pl. 12(n) Add. Facts ¶ 4, Ex. A ¶ 9.)

The parties agree that, at some point, Favia called his friend, Joe Lewis ("Lewis"), and told Lewis, that he needed to be able to cash a check. (Pl. 12(n) Add. Facts ¶ 6, Ex. C at 16–21; Def. 12(n) Reply ¶ 6.) Lewis, who knew Defendant well through regular business contacts, then called Defendant on or about March 18, 1991 with regard to cashing a single check for Favia. (Pl. 12(n) Add. Facts ¶ 6, Ex. C at 14–15; Def. 12(n) Reply ¶ 6.) Defendant was mainly just concerned "that the checks be good. That's all." (Pl. 12(n) Add. Facts ¶ 6.) Lewis told Defendant he didn't have "to worry about the check," and Lewis vouched for it. (Pl. 12(n), Ex. C at 20–21.) Then, when one of the Loyola L employees spoke by phone with Defendant regarding cashing a check for Favia, Defendant instructed that the employee cash the check. (Pls. 12(n) Add. Facts ¶ 9; Def. 12(n) Reply ¶ 9.)

Plaintiffs allege that subsequently, through early 1995, Favia obtained checks from Plaintiffs by making repeated misrepresentations that the checks were needed to pay for construction and related expenses incurred in advancing Plaintiffs' construction projects. (Def. 12(m) ¶ 9; Pls. 12(n) ¶ 9.) Favia then repeatedly took Plaintiffs' checks made out to different entities to Loyola L and presented the checks for payment for the amount stated on their face less Loyola L's service fee (which was from 1 to 1.5%). (Def. 12(m) ¶ 10; Pls. 12(n) ¶ 10; Exs. A & B to the Complaint.) According to Defendant (and Plaintiffs presented no contrary facts), these checks were then delivered from Loyola L via private armored carrier service to Lincoln National Bank—along with other checks cashed at Loyola L—in the ordinary course of business. (Def. 12(m) ¶ 10; Pls. 12(n) ¶ 10.)

Although Plaintiffs allege Defendant played an active role in Favia's check cashing scheme, Defendant denies that he gave approval for the cashing of any alleged fraudulent or fictitious checks presented by Favia after Favia's first visit. (Def. 12(n) Reply ¶ 12; Def. Mem., Ex. A.) Defendant further denies any knowledge of, or involvement in, any check cashing scheme with Favia or any other individual at any time. (*Id.*) Lewis has also signed an affidavit denying having any knowledge of or involvement in establishing a check cashing scheme for Favia or Fishman. (Def. Mem., Ex. B.) At his subpoenaed deposition, Favia asserted his Fifth Amendment privilege against self-incrimination and refused to answer questions regarding the allegations raised in Plaintiffs' complaint. (Def. Mem., Ex. C.)

Plaintiffs maintain that Fishman's involvement in the scheme is indicated by the fact that normal check cashing procedures at Loyola L were not followed with respect to Favia's checks. Normal check cashing procedures at Loyola L include having a signature card on file for customers who cash checks. (Pls. 12(n) Add. Facts ¶ 10; Def. 12(n) Reply ¶ 10.) A Loyola L employee filled out a signature card for Favia dated February 26, 1992 which mentioned "Libertyville Lumber." (Pls. 12(n) Add. Facts ¶ 15; Def. 12(n) Reply ¶ 15, Ex. D, Dep. Ex. 1.) Nevertheless, Loyola L employees cashed other checks from Favia made payable to other entities without checking Favia's signature card or checking with the employer or company on the check to verify the check's accuracy. (Pls. 12(n) Add. Facts ¶ 12, Ex. D at 49–51, Ex. E at 25–26; Def. 12(n) Reply ¶ 10.)

In addition, Defendant testified that it was Loyola L's policy that if an individual presented a check to Loyola L for over $100, the Loyola L employee would call the company who was the drawer of the check for verification. (Pls. 12(n) Add. Facts ¶ 10, Ex. B at pp. 28–29; Def. 12(n) Reply ¶ 10.) Loyola L

employees further stated that the cashier would call Fishman or one of his sons for approval before cashing a check over $2000 or $3000. (Pls. 12(n) Add. Facts ¶ 10, Ex. D at pp. 19–24, Ex. E at p. 10; Def. 12(n) Reply ¶ 10.) The above procedures were not followed with respect to the American and Emalfarb checks Favia cashed at Loyola L. (*Id.*) Nor were the procedures followed after an American check cashed by Favia was returned to Loyola L for insufficient funds in February 1992. (Pls. 12(n) Add. Facts ¶ 11, Ex. D at pp. 51–55; Def. 12(n) Reply ¶ 11.)[1]

Plaintiffs state that around February 1995, Mark Emalfarb, his assistant, and his accountant began to discover that Favia had been requesting checks made payable to unintended and/or fictitious payees. (Pls. 12(n) Add. Facts ¶ 17.) Plaintiffs state that they discovered a total of 16 Emalfarb checks dated from March 1991 through December 1991 totaling $27,363.76 and 54 American checks dated from March 1992 through December 1994 totaling $156,807.36 made payable to unintended and/or fictitious payees. (Pls. 12(n) Add. Facts ¶ 22.)

Defendant states that the only sums Loyola L collected from Favia's checks was, at most, $2,760.57 resulting from the payment of Loyola L's standard 1–1.5% fee. (Def. Mem., Ex. A ¶ 13.)

On or about August 24, 1995, Plaintiffs entered into a settlement agreement with Favia. (Pls. 12(n) Add. Facts ¶ 21.) In this settlement, Favia paid Plaintiffs $196,528.04. (Pls. Resp., Ex. D at p. 2.) Plaintiffs allege that this settlement did not compensate Plaintiffs for their losses caused by the fraudulent check cashing scheme. Instead, Plaintiffs allege the settlement compensated them for various other losses and expenses incurred by Plaintiffs and caused by Favia. (*Id.*)

## ISSUES

Plaintiffs' Complaint alleges that Defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), § 1962(c), in that Defendant was employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity. Plaintiffs' Complaint also alleges that Defendant violated RICO § 1962(d), in that Defendant conspired to violate provisions of RICO § 1962(c) with Favia, as part of a pattern of racketeering activity, effectuating and maintaining their criminal and fraudulent check cashing scheme by utilizing the mails and telephone wires in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an

---

1. Defendant states that he has "insufficient knowledge to admit or deny whether Loyola L followed its normal check cashing procedures" but fails to provide any evidence to the contrary. (Def. 12(n) Reply at ¶ 10.)

element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## II. *18 U.S.C. § 1962(c).*

■■■ To succeed in establishing a cause of action under § 1962(c), plaintiffs must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346(1985); *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 249 (7th Cir.1995).[2] The remedy for an injury to business or property caused by violation of § 1962 is a civil one: the recovery of treble damages plus costs and reasonable attorney's fees. 18 U.S.C. § 1964(c). Proof of liability is by a preponderance of the evidence. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992).

Initially, Plaintiffs assert, and Defendant does not dispute, that Loyola L satisfies the definition of an enterprise under the RICO statute.

■■■ Once the existence of an enterprise is established, the plaintiff bears the burden of demonstrating that the defendant "conduct[ed] or participat[ed], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).[3] A "pattern of racketeering activity" under RICO consists of at least two predicate offenses that "are related and that amount to, or threaten the likelihood of, continued racketeering activity." *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir.1991) (*citing H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Thus, predicate offenses under RICO form a pattern only when they have both "continuity" and a "relationship." *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. *See also Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) (relevant factors in determining whether there is the requisite "continuity" and "relationship" are: (a) the number and variety of predicate acts and the length of time over which the acts are committed; (b) the number of victims; (c) the presence of

2. As a preliminary matter, Defendant argues that Plaintiffs lack standing under 18 U.S.C. § 1964(c), suggesting that Plaintiffs were reimbursed for any injury they incurred in the check cashing scheme in receiving Favia's settlement payment. In dealing with this issue on Defendant's motion to dismiss, Magistrate Judge Ashman stated "Plaintiffs would not lose standing if they had been compensated for unrelated transactions or injuries as long as they suffered an uncompensated injury resulting from [Defendant's] alleged RICO violation." *American Auto. Accessories, Inc. v. Fishman*, No. 95 C 5156, 1996 WL 480369, at *4 (N.D.Ill. Aug.22, 1996). Plaintiffs argue that any sums they received from the Favias were allocated as compensation for various other losses and expenses incurred by Plaintiffs and caused by Favia as set forth in the August 24, 1995 settlement agreement. (*See* Pls. 12(n), Ex. E at p. 5.) Because Defendant has not demonstrated as a matter of law that the settlement money received by Plaintiffs concerned the funds converted by the check-cashing scheme, for purposes of this summary judgment motion Defendant's standing argument must fail.

3. In *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court explained that the term "conduct" in the RICO statute involves some act of direction, while the term "participate" as it is used in the phrase "participate ... in the conduct of ... affairs" inheres a role in that direction. *Id.* at 179, 113 S.Ct. at 1170. In *MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.*, 62 F.3d 967 (7th Cir.1995), the Seventh Circuit articulated a distinction between defendants "outside" the enterprise and those who are "inside" the enterprise by virtue of their membership therein and relied on the nature of the enterprise as a basis for its decision. *Id.* at 978. Specifically, the court drew a distinction between the defendant in *Reves*, an accounting firm considered an "outsider" to the enterprise by the Court, and the two associations at issue in *MCM Partners* which were alleged to be part of the enterprise itself. *Id.* at 979. According to *Reves* and *MCM Partners*, "outsiders" who assist in an enterprise's affairs, without more, are not liable under RICO while "insiders" who through the chain of command either make or knowingly carry out the enterprise's decisions may be held accountable.

separate schemes; and (d) the occurrence of distinct injuries).

▪ The racketeering activity upon which Plaintiffs premise their RICO claims is mail and wire fraud. *See* 18 U.S.C. §§ 1341, 1343. Such a RICO claim requires that the plaintiffs establish that the defendant: (1) has participated in a scheme to defraud, and (2) has mailed or knowingly has caused to be mailed a letter or other material, or used the wire service, for the purpose of executing the scheme. *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 958 (7th Cir.1989). To support their RICO claim here, therefore, Plaintiffs must establish that Defendant knowingly schemed to defraud Plaintiffs of their property and used the mail or wire services in furtherance of this scheme. *See Marcial*, 880 F.2d at 958.

Defendant argues that he cannot be liable under § 1962(c) because there is no evidence that he committed a pattern of racketeering activity, *i.e.* at least two predicate offenses "related and that amount to, or threaten the likelihood of, continued racketeering activity." Initially, Defendant asserts that neither he nor Loyola L employees at his direction ever used the United States Postal Service or engaged in interstate use of any wire service in connection with any of actions Plaintiffs allege he conducted. (Def. Mem., Ex. A at ¶ 5.) Defendant asserts that all of Loyola L's banking transactions occurred via a contracted armored car carrier. (*Id.* at ¶ 10.)[4] Defendant also states that he never made interstate telephone calls with regard to any of the communications alleged in Plaintiffs'

complaint; the initial calls between Favia, Lewis and Defendant setting up Favia's initial check cashing at Loyola L occurred while all parties were located within Illinois.[5]

In opposition to summary judgment, Plaintiffs argue that the evidence demonstrates that Defendant can be charged directly with the acts of mail and wire fraud constituting the RICO predicate acts and pattern of racketeering activity. Plaintiffs note that: (1) Favia and Defendant came together for the cashing of the first check through a mutual friend, Lewis; (2) Defendant, then, agreed to cash the first check for Favia; (3) Favia continued to return to Loyola L to cash checks made out to different entities; (4) the Loyola L cashiers continued to cash the checks presented by Favia; and (5) Defendant accepted the fruits of the fraudulent scheme because the Loyola L corporate entity deducted and retained a percentage of the check cashed by Favia as a fee.

▪ After a careful review of the facts set forth by Plaintiffs, this court finds that the evidence Plaintiffs present in opposition to Defendant's summary judgment motion does not raise a material issue of fact regarding whether Defendant conducted or participated (as defined above) in the check cashing scheme through a pattern of racketeering activity. Plaintiffs, dispositively, have simply not presented any evidence that Defendant made any interstate phone calls or utilized the postal service regarding the check cashing scheme. Therefore, Plaintiffs have not established the requisite mail or wire fraud essential to a § 1962(c) violation. *See Marcial*, 880 F.2d at 958.[6]

4. Defendant additionally argues that any alleged communications from Loyola L to Plaintiffs' banks could not be deemed in furtherance of any alleged scheme to defraud Plaintiffs because those communications placed Plaintiffs on notice of the alleged scheme, *e.g.* every transaction consummated by Favia at Loyola L was disclosed to Plaintiffs' bank (and presumedly Plaintiffs) on the reverse side of every check. *See, e.g., Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 649 (7th Cir.1986).

5. The federal wire fraud statute extends only to interstate communications. 18 U.S.C. § 1343. *See also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 n. 7 (7th Cir.1992).

6. The court notes also that the evidence relied on by the Plaintiffs simply is insufficient to raise a genuine issue of material fact as to whether the individual Defendant "knowingly" schemed to defraud Plaintiffs of their property.

For example, Plaintiffs argue that Loyola L's deduction and retention of a percentage of each check cashed by Favia as a fee demonstrates that Defendant participated in the fraudulent check cashing scheme because a person "who knowingly accepts the fruits of fraudulent conduct is also guilty of that fraud." *See Terrell v. Childers*, 920 F.Supp. 854, 866 (N.D.Ill.1996). This argument must fail because Plaintiffs have not set forth sufficient evidence to meet their burden that Defendant, as opposed to Loyola L, accepted

Plaintiffs additionally insinuate that Defendant indirectly participated in the scheme and is therefore subject to "aider and abettor liability" under § 1962(c).[7] As Magistrate Judge Ashman explained in ruling on Defendant's motion to dismiss, the elements for pleading a claim of aiding and abetting are: (1) the existence of an independent wrong committed by the primary offender; (2) the rendering of substantial assistance to the primary wrongdoer by the aider and abettor; and (3) the requisite scienter on the aider and abettor. *R.E. Davis Chem. Corp. v. Nalco Chem. Co.,* 757 F.Supp. 1499, 1515 (N.D.Ill.1990). "Substantial assistance means more than just a little aid. To put it another way, to be held liable as an aider and abettor, a person must in some sort associate himself with the venture, . . . participate in it as something that he wishes to bring about, [and] seek by his action to make it succeed." *FMC Corp. v. Boesky,* 727 F.Supp. 1182, 1200 (N.D.Ill.1989) (internal citations and quotations omitted).

A thorough review of the facts set forth by Plaintiffs shows that Plaintiffs cannot survive summary judgment on their aider and abettor theory. Plaintiffs have not demonstrated that there is a material issue of fact that Defendant substantially assisted Favia's fraudulent cashing of the checks. Nor have Plaintiffs set forth evidence which would raise a material issue of fact that Defendant had the requisite intent to assist in such a scheme.

Specifically, the mere fact that Defendant authorized the cashing of the initial check, after being assured by a trusted business acquaintance, *inter alia,* that the check was "good," is, in isolation, innocuous on its face. Even coupling this with the fact that employees of the currency exchange subsequently uncarefully cashed Favia's properly signed checks (which cleared for years), Plaintiffs evidence, even with all reasonable inferences therefrom favorable to Plaintiffs, is insufficient to meet the requisite scienter (or substantial assistance) requirements against the Defendant here. In short, in the face of the Defendant's (and Lewis') sworn evidence of non-knowledge, it cannot be reasonably inferred from a single unspecial check authorization and mere later check cashings (albeit uncareful) by firm employees that Defendant knew of (or assisted in) Favia's fraudulent check cashing scheme.

In sum, summary judgment must be granted Defendant as to Plaintiffs' § 1962(c) claim.[8]

### III. *18 U.S.C. § 1962(d).*

Section 1962(d) prohibits a conspiracy to violate any of RICO's other substantive provisions, including § 1962(c). 18 U.S.C. § 1962(d). Here, plaintiffs allege that defendants conspired to commit a § 1962(c) violation. As with any conspiracy charge, in order to prevail on their claim, plaintiffs must proffer evidence of an agreement between and among the defendants. *See United States v. Neapolitan,* 791 F.2d 489, 497 (7th Cir.1986) ("[A] conspiracy to violate RICO should not require anything beyond that re-

---

the 1 to 1.5% check fee and that Defendant accepted that fee with *knowledge* of the check cashing scheme. (*See also* discussion *infra* at p. 993.)

7. Defendant argues that there is no civil "aider and abettor" liability under § 1962(c). In ruling on Defendant's motion to dismiss, Magistrate Judge Ashman found that there is "aider and abettor" liability under the RICO statute. *See American Auto. Accessories, Inc. v. Fishman,* No. 95 C 5156, 1996 WL 480369, at *6–7 (N.D.Ill. Aug.22, 1996). Defendant has not adequately argued why this court should disturb this law of the case, especially in light of the fact that the Seventh Circuit "has not commented on the possibility of aiding and abetting liability in civil RICO actions." *In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 954–55 (7th Cir.1996).

8. Defendant also argues that Plaintiffs' claim should be rejected because "but for Plaintiffs' own neglectful and sloppy business practices in issuing and signing each and every check over a period of four years, Favia's conduct could not have occurred." Defendant argues that § 4–406 of the Illinois Uniform Commercial Code imposes a duty on payors to exercise reasonable promptness in discovering and reporting unauthorized signatures to the payor bank. Plaintiffs note that § 4–406(c) pertains to the discovery and reporting of "authorized signatures" of bank customers, *i.e.,* the Plaintiffs. *See* 810 ILCS 5/4–406, cmt. 5 ("Section 4–406 imposes no duties on the drawer to look for unauthorized endorsements."). Therefore, the Illinois statute governing the relationship between Emalfarb, American and their banks is not relevant here.

quired for a conspiracy to violate any other federal crime.").

■ Agreement is the cornerstone of any RICO conspiracy claim. *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 960 (7th Cir. 1996). In fact, it is the agreement to violate RICO's substantive provisions, not the actual violations themselves, that imposes liability under § 1962(d). *Schiffels v. Kemper Fin. Serv., Inc.*, 978 F.2d 344, 348 (7th Cir.1992). The Seventh Circuit has observed:

"From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements [.]" *Neapolitan*, 791 F.2d at 499. The first is "an agreement to conduct or participate in the affairs of an enterprise [or to acquire or maintain any interest in or control of any enterprise] through a pattern of racketeering activity." *Id.* at 498. The second is "an agreement to the commission of at least two predicate acts." *Id.* at 499. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Finally, a "RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances." *Id.* at 501 (*citing Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)).

*Gagan*, 77 F.3d at 961.[9]

■ Accordingly, to withstand a motion for summary judgment, Plaintiffs must show that a genuine issue exists as to whether Defendant agreed to conduct (or participate in the conduct of) the check cashing scheme through a pattern of racketeering activity, and that Defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. Plaintiffs are not required to show, however, that Defendant committed the predicate acts himself, *Schiffels*, 978 F.2d at 348, or that Defendant agreed to commit the predicate acts himself or even participate in their commission. *Neapolitan*, 791 F.2d at 498 (breadth of RICO conspiracy liability extends even to

"those persons who while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate" offenses). Rather, Plaintiffs need only demonstrate that Defendant agreed that the acts would be committed on behalf of the conspiracy. *See, e.g., United States v. Quintanilla*, 2 F.3d 1469, 1484 (7th Cir.1993); *United States v. Campione*, 942 F.2d 429, 437 (7th Cir.1991).

■ In its motion, Defendant argues that there is no evidence that Fishman agreed that two predicate acts would be committed on behalf of the conspiracy. Initially, Defendant states that he only authorized the cashing of the first check, innocuously, after a trusted business acquaintance (Lewis) vouched for the check and stated the check was "good." Defendant points to Lewis' affidavit, which Defendant maintains is unrebutted, which expresses Lewis had no knowledge or involvement in Favia's check cashing scheme. Defendant further states that, in any event, his permission for Favia to cash one check on one occasion does not establish Defendant's ongoing participation in the alleged check cashing scheme. Instead, Defendant maintains that, after Favia's first transaction at Loyola L, Loyola L's employees took it upon themselves to cash the checks presented by Favia. Defendant argues that in the face of his sworn affidavit of non-knowledge and non-participation any perceived check cashing shortcomings by employees at Loyola L do not establish his agreement to or knowing participation in the check cashing scheme or the commission of any predicate act under RICO.

■ In response, Plaintiffs argue that the evidence demonstrates that Fishman was involved in a RICO conspiracy. Plaintiffs note that the evidence demonstrates that Defendant authorized Favia to cash his first check. Plaintiffs note that Loyola L employees continued to cash the checks presented by Favia regardless of who was listed on the check as the payee. Plaintiffs additionally argue that Loyola L employees did not follow usual

---

**9.** Too, the conspiracy agreement must be "objectively manifested ..." *United States v. Balzano*, 916 F.2d 1273, 1289 (7th Cir.1990).

safeguards or procedures set up by the currency exchange in dealing with Favia's checks (even after one of Favia's checks was returned to Loyola L for insufficient funds).[10]

Plaintiffs also suggest that certain deposition testimony provides evidence of an agreement with Favia. A careful review of the deposition testimony, however, fails to support Plaintiffs' claim. Plaintiffs first suggest that Defendant's own deposition testimony demonstrates his agreement with Favia. Defendant, however, testified that he could not recall if he had ever met Favia and that his only communication with Favia was that Favia "called [Defendant] possibly to ask [Defendant] if he [could] cash one of his company checks." (Pls. 12(n), Ex. B at pp. 33–34.) Plaintiffs also suggest that deposition testimony by a Loyola L employee demonstrates that Defendant authorized Favia to cash a later check on February 26, 1992. However, review of the deposition testimony cited discloses that the employee was referring to the initial check cashing incident that the Defendant approved, and not to a subsequent check cashing incident. (Pls. 12(n), Ex. E at pp. 10–23.)

This court finds that the deposition testimony and other evidence Plaintiffs have set forth in opposition to Defendant's summary judgment motion with regard to the § 1962(d) claim is insufficient to meet Plaintiffs' burden of proof that Defendant was involved in a conspiracy. Although it is true that evidence of a conspiratorial agreement can be proven by circumstantial evidence, *see Gagan,* 77 F.3d at 961, Defendant's alleged membership in the conspiracy here cannot reasonably be inferred from the circumstantial evidence presented by the Plaintiffs herein.

In sum, Plaintiffs have not carried their burden of presenting or pointing to evidence which demonstrates the existence of a genuine issue of material fact to support a RICO conspiracy claim under § 1962(d).

**10.** Plaintiffs, of course, seek to infer more, but it nonetheless bears noting that, by themselves, "acts of negligence are not predicate acts under

For the reasons set forth above, Defendant's motion for summary judgment is granted, and the cause is dismissed with prejudice.

the RICO statute ..." *Brandenburg v. Seidel,* 859 F.2d 1179, 1188 (4th Cir.1988).